LESLIE M. SAUNDERS et al., Respondents, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

In order to give a littoral proprietor title by accretion, the increase must be by such imperceptible degrees that, although persons were able to perceive from time to time that the land had increased on the water line, they could not perceive the progress of the accumulation at the time it was made.

The filling up of a bay in a river by the owner of the adjoining uplands by cutting down the bank above the shore line, does not give title to the bay by accretion.

Nor can such owner acquire title to the land under water belonging to the state by thus entering upon it without any right and filling it up, and, as between him and the state, it still remains land "under water."

A grant from the state of lands under navigable waters may not be impeached collaterally unless void on its face.

*It seems,* it can only be assailed by a direct proceeding to review the determinations of the commissioners of the land office, or by an action in equity to set it aside, and the recitals in the grant are *prima facie* evidence of compliance with the preliminary requisites of the statute.

While the state holds the title to lands under navigable waters in a certain sense as trustee for the public, it is competent for the legislature to authorize and regulate grants of the same for public or such other purposes as it may determine to be for the best interests of the state.

The provisions, therefore, of the General Railroad Act (§§ 25, 49, chap. 140, Laws of 1850), empowering the commissioners of the land office to

grant to any railroad company any lands belonging to the state required for the purposes of its road, as applicable to lands under navigable waters, are constitutional.

*N. Y. C. & H. R. R. R. Co.* v. *Aldridge* (135 N. Y. 83); *Rumsey* v. *N. Y. & N. E. R. R. Co.* (114 id. 423; *S. C.*, 133 id. 79; 136 id. 543), distinguished.

Said provisions are not limited by the provision of the Revised Statutes (1 R. S. 208, § 67) prohibiting grants of land under water to any one except the adjacent riparian owner. The provisions of the Railroad Act, being subsequent and independent and for a special purpose, enlarge the powers of the commissioners and are not affected by the restrictions of the Revised Statutes.

A grant by said commissioners to a railroad company of land under the waters of a navigable river is valid and effectual to vest in the company all the rights that the state had therein.

Such a grant, however, does not extinguish or impair the easements or riparian rights of the owners of the uplands, such as the right of access to the navigable part of the river, the right to make a landing, wharf or pier, and the right of passage to and from the same.

Where, therefore, the roadbed of a railroad company built upon land granted by the state passes between the upland and the usual place of access to the river, and cannot be conveniently crossed, it is the duty of the company, at its own expense, to construct and maintain convenient passes or roads across or under the railroad for the passage of persons, teams, etc., from the upland to the river front.

The route of the H. R. R. Co., which was incorporated in 1846 (Chap. 216, Laws of 1846), by the map filed locating its road, crossed a large bay on the east side of the Hudson river, requiring a strip of land in the bed of the river below high-water mark, of the width of seventy-three feet. F., the then owner of the upland, executed to the company a conveyance of the strip. There was no stipulation in the deed binding the company to construct a culvert or other means of access by water from the bay to the channel of the river; it reserved, however, all the rights of the grantor to all lands below high-water mark, except that portion taken by the company for its use as then located. The company covenanted that the grantor, his heirs and assigns, might at any time erect a wharf or wharves into the river and connect the same with the property line of the road, and that it would make and prepare a way over its track for free passage to any wharf so erected. *Held*, that by the deed the original riparian rights of the grantor, except as specially provided therein, were cut down and diminished to such an extent as was reasonably necessary for the maintenance and operation of the road upon the seventy-three feet.

The railroad was constructed by building a solid embankment of earth across said strip upon the land so granted, cutting off that part of the bay east of it from access to the river. In 1853 one of plaintiffs' prede-

cessors in title filled in the bay between the shore and the railroad with earth from the uplands.    In 1868, defendant having succeeded to the rights and franchises of the H. R. R. Co., made the necessary surveys and maps for the purpose of widening its roadbed.    This included a strip of land across said bay east of and adjoining the original roadbed. Defendant procured a patent for this strip from the commissioners of the land office under the provisions of said Railroad Act.    In 1869 and 1887 plaintiffs or their grantors, who had succeeded to F.'s title to the uplands, obtained from the commissioners patents for a strip of land under water westerly of and adjoining the original exterior line of the railroad.    In 1870 defendant filled in the strip covered by its state grant, raising it up to the grade of the original roadbed, and laid tracks thereon.    In an action to restrain defendant from operating its road over said strip, *held*, that plaintiffs, by the filling in of said land, acquired no title thereto; that defendant's grant from the state was not void on its face at least, and so could not be impeached in this action, and that plaintiffs were not entitled to the relief sought.

The trial court found that the rails and ties placed by defendant upon the land in question projected above the surface of the ground so as to impede passage and obstruct access to the river from the upland, and at times it maintains standing cars thereon.    *Held*, that defendant was bound, both by its covenant in the deed from F. and by its general obligations to plaintiffs as riparian owners, to construct and maintain a suitable, safe and reasonably convenient way or ways over its roadbed, and furnish access to the river front; and that plaintiffs were entitled to a judgment requiring it to perform those duties and obligations.

Reported below, 71 Hun, 153.

(Argued November 1, 1894; decided December 4, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made July 28, 1893, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Hamilton Harris* for appellant.    The plaintiffs' alleged title to parcel F was not established on the trial, nor did the plaintiffs show any right, title or interest in or to the said parcel F, which entitled them to the relief had by the judg-

ment. (*People ex rel.* v. *Comrs., etc.*, 135 N. Y. 447; *Shively* v. *Bowlby*, 152 U. S. 21; *Kerr* v. *N. S. R. R. Co.*, 127 N. Y. 269; *N. Y. C. & H. R. R. R. Co.* v. *Aldridge*, 135 id. 83; *Fobes* v. *R., W. & O. R. R. Co.*, 121 id. 565; *People* v. *Kerr*, 27 id. 188; *Kane* v. *N. Y. E. R. R. Co.*, 125 id. 184.) The title of the defendant to parcel F is perfect, and the right to maintain and operate its tracks thereon is absolute. (*N. Y. C. & H. R. R. R. Co.* v. *Aldridge*, 135 N. Y. 83; *Kerr* v. *W. S. R. R. Co.*, 127 id. 269; *Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 135 id. 613; *De Lancy* v. *Piepgras*, 138 id. 26.)

*Ralph E. Prime* for respondents. Plaintiffs' rights constitute property protected by the Constitution, and the same is to be protected by the power of the courts. (*Rumsey* v. *N. Y. & N. E. R. R. Co.*, 133 N. Y. 79; *Yates* v. *Milwaukee*, 10 Wall. 497; *Buccleuch* v. *M. Board, etc.*, L. R. [5 H. L. App.] 418; *Lyon* v. *F. Co.*, L. R. [1 App. Cas.] 662; *R. Co.* v. *Pion*, 14 id. 612; *I. C. R. R. Co.* v. *State*, 13 Sup. Ct. Rep. 115; *Shively* v. *Bowlby*, 14 id. 548, 553; *Van Dolsen* v. *Mayor, etc.*, 17 Fed. Rep. 817.) A riparian owner has a title in the land itself below old high-water mark. (*In re Yonkers*, 117 N. Y. 564; *Yates* v. *Milwaukee*, 10 Wall. 497; *I. C. R. R. Co.* v. *State*, 13 U. S. 115; 3 Zab. 624; 32 Conn. 43; 6 Mass. 332; 12 Pick. 467; 8 Greenl. 85; 2 Whart. 508; 10 Mich. 125; 14 S. & R. 9; 4 Harr. & McH. 540; 12 R. I. 348.) The plaintiffs, as riparian owners, have a right of access from their original upland to the river, to their land under water, parcel G, patented to them and their grantors, to such wharves as they should build and to go to the location in order to build them. (*Rumsey* v. *N. Y. & N. E. R. R. Co.*, 114 N. Y. 423; *N. Y. C. & H. R. R. R. Co.* v. *Aldridge*, 135 id. 83; *Wheeler* v. *R. & S. R. R. Co.*, 12 Barb. 227.) The map filed in 1873 by the defendant, the railroad company, is void and ineffectual. (*N. Y. C. & H. R. R. R. Co.* v. *Aldridge*, 135 N. Y. 83.) The defendant has made a further claim to title under a grant from the com-

missioners of the land office, made in 1873. That claim is also equally void and ineffectual. (*Kerr* v. *W. S. R. R. Co.*, 127 N. Y. 269; *Bell* v. *Gough*, 3 Zab. 687; *Yates* v. *Milwaukee*, 10 Wall. 497; *In re City of Yonkers*, 117 N. Y. 564.) The remedy by injunction is the correct remedy. (*Rumsey* v. *N. Y. & N. E. R. R. Co.*, 114 N. Y. 424; 133 id. 79; *Henderson* v. *N. Y. C. & H. R. R. R. Co.*, 78 id. 423, 430; *Corning* v. *T. I. & N. Factory*, 40 id. 191.) There was nothing in the claim of twenty years' adverse possession of defendant, set up in the answer as a defense, and the court on the proofs has disposed of that question against the defendant. (*Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 135 N. Y. 613.) Defendant also alleged for defense that neither plaintiffs nor their grantors had been in possession of parcel F within twenty years. That defense is applicable only to an ejectment suit, which this action is not. But even if applicable here, we have shown legal title in plaintiffs within twenty years, and after such proof the statute raises the presumption that the possession of any one else was under the plaintiffs. (Code Civ. Pro. § 368.) On the trial defendant claimed that the deeds by which plaintiffs held their title were void, because of the statute avoiding deeds of land in the actual possession of other persons claiming adversely. The claim is wholly without merit. (*Dawley* v. *Brown*, 79 N. Y. 390; *Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 135 id. 613.)

O'BRIEN, J. The plaintiffs are the owners of certain uplands on the easterly shore of the Hudson river at Yonkers, and they brought this action to enjoin and restrain the defendant from maintaining or operating its railroad over or upon a parcel of land sixty feet in width and about one hundred feet in length, situated below the original high-water mark and in front of their uplands. The courts below have sustained the action upon the ground that the plaintiffs have the title to the disputed parcel, and that the possession and use of the same by the defendant is wrongful. The important questions of law involved cannot be discussed or clearly understood without

an accurate knowledge of the material facts. Omitting many that are merely incidental and collateral, the following facts, as to which there is no dispute, lie at the basis of the controversy. The defendant's present corporate organization dates from the year 1869, when the New York Central and Hudson River railroads were consolidated into one corporation, under the authority of the statute passed in that year. It absorbed these two corporations, and succeeded to all the rights, powers and franchises that either or both possessed, or could exercise, and became capable of acquiring additional rights, franchises and powers in conformity with law. The Hudson River Railroad Company was incorporated by chapter 216 of the Laws of 1846. Power was conferred upon it to enter upon any land or water for the purpose of locating its road and making surveys and maps. The location of the road at the point in question was fixed by a map filed in September, 1847. It extended from two points of land across a considerable bay formed by the river, quite a distance from the shore and below high-water mark, requiring a width of seventy-three feet in the bed of the river. At that time one Ethan Flagg was the owner of the uplands on the easterly shore of the bay, and opposite the land under water which the railroad required. He owned to high-water mark, with such incidental rights in the shore and river as pertain to riparian ownership. In August, 1847, he granted to the railroad, for the consideration of one hundred dollars, a strip of land under the waters of the river, below high-water mark, seventy-three feet wide, just westerly from and adjoining the parcel in question. Subsequently, and not later than the year 1849, the railroad was constructed by building a solid embankment of earth across the bay, upon the land under water so granted, and that part of the river east of the embankment became, as described in the findings, a landlocked bay, except that at a point north of the lands of Flagg a small culvert was constructed under the roadbed through which only small boats could pass at half tide. While this opening permitted the flow of the water to some extent into the bay, yet it is plain that the bay was substantially cut off from

the channel of the river except so far as communication was possible across the railroad. It is important here to get a clear understanding of the respective rights of Flagg and his grantee, the railroad company, and the changes, if any, which this grant worked upon his riparian rights, since the plantiffs have succeeded only to his rights. There was no stipulation in the deed binding the railroad to construct any culvert or other means of access by water from the bay to the channel of the river, but the deed reserved all the rights of the grantor to all lands below high-water mark in the river except the portion taken by the railroad for its use as then located. The railroad was released from all damages which the grantor might sustain by reason of the construction of the road through his lands and premises, during the construction of the same in front of his premises. The railroad covenanted in the deed that Flagg, his heirs or assigns might at any time erect a wharf or wharves into the river, and connect the same with the property line of the road, and that the company should make and prepare the way over its track for free passage of the grantor, his heirs and assigns to the wharf or wharves whenever erected.

The railroad was, therefore, built in the bed of the river, across the bay, in front of the grantor's uplands, with his consent, and, except as specially provided in the deed, his original riparian rights were thereby cut down and diminished to such extent as was reasonably necessary for the maintenance and operation of a railroad upon the seventy-three feet granted. This proposition, I think, is not denied, and there is really no controversy as to the right of the defendant to maintain and operate its road within the lines of the original grant. The plaintiffs' contention rests upon subsequent acts which must now be stated.

The plaintiffs have succeeded to Flagg's title to the uplands through various mesne conveyances, and, except their claim to accretion by filling up the bay east of the railroad, which will be referred to hereafter, they have his title and no other. In June, 1868, the defendant resolved to change its line, or rather,

it seems, to make the roadbed wider, and for that purpose to acquire more land. The necessary surveys and maps for that purpose were made and filed, which included the parcel in question, a strip east of and adjoining the seventy-three feet, which extended the roadbed towards the shore and the upland sixty feet, but all below original high-water mark. The defendant procured a patent of this strip from the commissioners of the land office Dec. 26, 1873, under the provisions of the General Railroad Act (Laws of 1850, chap. 140, § 25). This is the grant upon which the defendant's claim of title is founded. But the plaintiffs also claim title, and their claim rests upon the following facts: In the year 1869, and again in 1887, they or their grantors obtained from the state, through the commissioners of the land office, patents for a strip of land under water westerly of the original exterior line of the railroad, about one hundred and twenty feet wide and adjoining the railroad, as was apparently contemplated by the Flagg deed, but these patents did not embrace any part of the parcel in question, which is wholly easterly of the roadbed as originally constructed. In the year 1853, one of the plaintiffs' predecessors in title of the uplands filled in the bay between the original shore and the railroad by depositing therein earth taken from the banks and bluffs on the uplands, but this filling did not entirely reclaim the submerged land, as the water, especially at high tide, continued to flow over it to some extent. But in the year 1870, when the defendant was about to increase the width of its roadbed, it made extensive additional filling on the strip in question and raised it up on a grade with its original roadbed and then laid down additional tracks upon it, and, having obtained the grant from the state of Dec. 26, 1873, has since substantially operated its railroad upon a roadbed one hundred and thirty-three feet in width. The plaintiffs have no grant whatever from the state or otherwise of the parcel, but rest their claim of title, aside from their general riparian rights, upon the reclamation of the land by filling up in 1853.

Accretion is undoubtedly one of the modes by which a title

to land may be acquired, but whether any title vested in the plaintiffs or any of their grantors in that way, under these circumstances, must be considered. The general rule is that, in order to give a littoral proprietor title to land by accretion, the increase must be by such imperceptible degrees that, although persons are able to perceive from time to time that the land has increased on the water' line, they could not perceive the progress of the accumulation at the time it was made. (*Mulry* v. *Norton*, 100 N. Y. 424.) The filling up of the bay by cutting down the banks and bluffs above the shore certainly did not give title by accretion within this rule. The case of *Steers* v. *City of Brooklyn* (101 N. Y. 51) does not, I think, sustain the plaintiffs' contention. When the opinion in that case is examined in connection with the facts in the record and with the statutes under which the plaintiff claimed, it will be seen that the defendant simply built a pier upon lands, the title to which was in the plaintiff, and the decision was to the effect that the pier thus built became the property of the plaintiff upon whose lands it was located. It may be true that when a man builds a structure upon his neighbor's land it becomes attached to and a part of the freehold upon which it stands and inures to the benefit of the owner of the soil in the absence of some agreement, express or implied, to the contrary.

But that principle has no application to this case, for the reason that here no one filled up any land to which the plaintiffs or any of their grantors had title, and the plaintiffs' grantors could not acquire title by filling up lands under water that belonged to the state. The plaintiffs' contention in this respect is answered by the remarks of EARL, Ch. J., in the case of the *People ex rel. Blakeslee* v. *The Commissioners of the Land Office* (135 N. Y. 447), where, after discussing some other claims of the relator, he says: " But he seems to place some reliance upon other facts. A few years before the grant to the company, he, being president of the company, caused the refuse from its foundries to be deposited in the water west of the railroad upon some of the land under water, subse-

quently granted to the company, and by this deposit the land was raised above the water. He certainly acquired no title to the land by thus entering upon it without any right and filling it up, and he did not thus become the proprietor of the 'adjacent land,' within the meaning of the statute above quoted. As between him and the state, it still legally remained land 'under water,' to be dealt with as such."

There is not, I think, any authority in this state to sustain the proposition that an adjacent owner can acquire title to lands under the waters of the Hudson river below high-water mark by filling it up, and the contention certainly has no foundation in reason or justice. No rights vested in the upland owner in virtue of these acts that he did not possess before.

This conclusion necessarily leaves the plaintiffs without any right to the parcel in question that can be derived from its title or ownership and goes far to defeat the action, since they can succeed only upon the strength of their own title and not upon the weakness or defects of the defendant's. But to rest here would leave open for further controversy some important questions that are raised by the objections urged against the title of the defendant and which are necessary to decide in order to define with accuracy the rights of the parties. The learned counsel for the plaintiffs insists that the grant from the state to the defendant of the parcel in question by the patent of Dec. 26, 1873, is absolutely void for reasons which require some consideration. Before examining these objections, however, it may be well to observe that the plaintiffs cannot impeach this grant collaterally unless it is void upon its face. It must be assailed, if at all, by a direct proceeding to review the determination of the commissioners of the land office, or by an action in equity to set it aside, and the recitals in it are *prima facie* evidence of its regularity and of compliance with the preliminary requisites of the statute. (*Blakeslee Mfg. Co.* v. *Blakeslee Sons' Iron Works*, 129 N. Y. 155; *N. Y. C. & H. R. R. R. Co.* v. *Aldridge*, 135 id. 83; *DeLancey* v. *Piepgras*, 138 id. 26.) It is not and cannot

well be claimed that this action, though in equity, is to set aside the patent. It is to restrain a trespass upon the plaintiffs' rights of property. If the commissioners had the power to make the grant upon any state of facts their action concludes the plaintiffs, and this brings us to the objections urged against it by them.

The main assault is based upon the proposition that the state had the title to this land, not as proprietor, but as sovereign and trustee for the public. The contention as to the nature of the title cannot be denied, but the conclusion sought to be drawn from the fact does not follow. The question was decided in this court in *Langdon* v. *The Mayor* (93 N. Y. 129) and *Mayor* v. *Hart* (95 id. 443), and has recently been examined with great learning by the Supreme Court of the United States in the case of *Illinois Central Railroad* v. *Illinois* (146 U. S. 387).

That case involved the title to a vast tract of land under the waters of Lake Michigan in and around the harbor of Chicago, extending a mile east of the exterior line of the original roadbed of the railroad, which the state assumed to grant to that corporation in 1869. It was held that the ownership, dominion and sovereignty over lands covered by tide waters, within the limits of the several states, belong to the respective states within which they are found, with the consequent right to use or dispose of any portion thereof, when that can be done without substantial impairment of the public interests, and subject to the paramount right of Congress to control their navigation so far as necessary for the regulation of commerce with foreign nations and among the states, and that the same rule was applicable to land under the waters of the great lakes. That the original roadbed, two hundred feet wide, with the necessary sidings and crossings which had been granted to it by the state, under a prior grant and various ordinances of the city of Chicago, was a reasonable public use, and no encroachment upon the domain of the state, and was valid. But that the grant extending one mile easterly of the line of the roadbed amounted to an abdication of its sover-

eignty and control by the state over the waters, and, in effect, a breach of the trust under which it held the same, and, therefore, revocable by the action of a subsequent legislature. The doctrine of that case, with respect both to what was sustained and what was condemned, amply supports the grant in this case, even if there was any ground for supposing that our own decisions do not completely settle the question, as I think they do. The land which a railroad corporation acquires in this state, though it may be technically called a fee, is for its use as a public highway, and this is a use for the benefit of the public, though perhaps the particular purpose for which the grant was made is not very material. (*Langdon* v. *Mayor*, *supra.*) While the state holds the title to lands under navigable waters in a certain sense as trustee for the public, it is competent for the supreme legislative power to authorize and regulate grants of the same for public, or such other purposes as it may determine to be for the best interests of the state, and the legislature has conferred power upon the commissioners of the land office to make such grants for railroad purposes. (*Shively* v. *Bowlby*, 152 U. S. 1.) Chapter 140 of the Laws of 1850 (§§ 25, 49) empower the commissioners to grant to any railroad company formed under that act any land belonging to the people of the state which may be required for the purposes of the road, upon such terms as may be agreed upon by them. This right vested in the defendant under the statute which authorized the consolidation, and applies to all railroads by section forty-nine.

There is nothing in any of the cases in this court to the contrary. In fact the point was not involved in any of them. In the *Aldridge* case (135 N. Y. 83) both the upland proprietor and the railroad had a grant from the state of the same land under water, but that of the upland owner was four years earlier in point of time, and it was held that his was the superior title. Except for the prior grant the power to patent to the railroad was assumed. In the *Rumsey* case, when it first came before the Second Division, it was held that a railroad company that had constructed its roadbed along

the shore of the river was not an "adjacent owner" within the meaning of the statute, and that an additional grant made to it by the state did not cut off the riparian rights of the upland owner.   (114 N. Y. 423.)

When the same case was here again (133 N. Y. 79 ; 136 id. 543) it appeared that the railroad had cut off the plaintiff's access to the river by building its road upon his land without any grant or condemnation proceedings, and we held he was entitled to damages.   None of these cases question the right of the state to make grants of land to railroads for railroad purposes, and in all of them the right is recognized.

It is said that the commissioners were expressly prohibited from making grants of land under the waters of the Hudson river to any one but the adjacent riparian owner, and the defendant, not being such owner, could take no title by the grant.   This prohibition is found in the Revised Statutes, passed at a time when grants for railroad purposes were not contemplated (1 R. S. 208, § 67); but no such limitation is to be found in section 25 of the act of 1850, authorizing grants for railroad purposes.   To hold that a railroad company could not take from the grant of the state in such cases, unless it was an upland proprietor, would render the statute practically inoperative.   That was a subsequent and independent enactment for a special purpose, enlarging the power of the commissioners, and the restrictions, qualifications and limitations contained in the Revised Statutes as to upland ownership were not imported into it.   The defendant's patent from the state was, therefore, valid and effectual to vest it with all the rights that the state had in the parcel in question.   But it could not extinguish or impair the easement or riparian rights which the plaintiffs or their grantors had as owners of the uplands and bank of the river.

What these rights are has been decided in the *Rumsey* case (133 N. Y. 79), and since that decision re-affirmed in the case of the *Illinois Central Railroad* v. *Illinois* (*supra*).   They embrace the right of access to the channel or navigable part of the river for navigation, fishing and such other uses as

commonly belong to riparian ownership, the right to make a landing wharf or pier for his own use or for that of the public, with the right of passage to and from the same with reasonable safety and convenience. . But the trial court has found that the title to this parcel of land was not in the defendant but in the plaintiffs, and, so far as the judgment rests upon these findings, it cannot be sustained. It practically deprives the defendant of all use or possession of the land for any purpose, and requires it to wholly discontinue the operation of its railroad upon it. We have already seen how the rights of the upland owner were affected by the grant from Flagg, under which the defendant acquired the right to operate its road upon the original seventy-three feet. The only ground of complaint that the plaintiffs have is with respect to such additional obstructions to the enjoyment of their riparian rights as have since that time been created by the defendant's acts in adding to the width of its roadbed in the manner described and in the manner of its use. The plaintiffs cannot complain of the operation of the road by the passage of trains, since their remote grantor consented to it by his grant to the defendant, without limitation or restriction of any kind. Whether any additional obstruction to the enjoyment of the rights incident to upland ownership have been created by the defendant since it obtained the grant of Dec. 26, 1873, was, I think, under the circumstances, a question of fact.

The fact that the defendant is now operating its road upon a bed sixty feet wider than before the grant, but upon its own land, does not furnish any substantial ground for equitable interference. The trial court has found, however, that the rails and ties placed by the defendant on its roadbed so project above the surface of the ground as to impede the passage of men, horses and carriages over the road, and to obstruct access to the river from the upland, and that at times it maintains standing cars thereon, thus interfering with the plaintiffs' riparian rights. This does not warrant that part of the judgment which enjoins the defendant absolutely from operating its road upon the sixty feet, and requires it to remove the track

and ties and never to replace them, but it does entitle them to some measure of relief. The defendant, under the covenant in the deed from Flagg, as well as by its general relations and obligations to the plaintiffs as riparian owners, is bound to construct and maintain a suitable, safe and reasonably convenient way or ways over its railroad which will furnish access to the water front for all such purposes as the plaintiffs have the right to resort to it as a public highway. Moreover, substantially the same duties and obligations have been imposed upon the defendant by the law of its creation. (Laws of 1846, ch. 216, §§ 14, 15, 16.) Wherever it crosses bays or streams it must, so far as practicable, restore them to their former usefulness. The owners of docks or water rights upon the river, outside the railroad, are protected by requiring the defendant to extend and improve the same when cut off, and generally to restore and preserve all property rights, so far as practicable.

Where the roadbed passes between the uplands and the usual place of access to the river, and cannot be conveniently crossed, it is the duty of the corporation, at its own expense, to construct and maintain convenient passes, or roads, across or under the railroad for the passage of persons, cattle, carriages and teams from the uplands to the river front. The findings in this case are to the effect that the defendant has not performed these duties and obligations, so far as the plaintiffs are concerned, and that it has interfered with the enjoyment of their riparian rights to the extent and in the particulars mentioned. The extent of the relief to which they are entitled is that the defendant shall be required by the judgment to perform these duties and obligations.

This result is in harmony with the doctrine of the *Rumsey* case (*supra*). There is a marked difference between that case and this, at least in the form of the action. In the former the plaintiff attempted to protect his riparian rights by an action to recover damages. In this case there is no claim made for damages sustained, but the owner has asked simply equitable relief against any future invasion of his easements. In the former case we held, that so far as the owner had sustained

damages in consequence of any encroachments by the defendant, that he was entitled to recover.    In this case we hold that in so far as the facts found justify the conclusion that the defendant has invaded the plaintiffs' rights, or is invading them, they are entitled to relief.    In that case it had been adjudged in previous actions that the defendant was obstructing access to the river without any right or title whatever as against the upland owner.    In the present case we hold that the defendant has a valid grant of the land from the state, good against all the world, except the plaintiffs' right of access to the river, and that, so far as necessary for the protection of these rights, the plaintiffs are entitled to prevail.

The judgment should, therefore, be modified in such manner as to give to the plaintiffs this relief, and this alone.    The order should be so framed as to accomplish this result, and, if its terms cannot be agreed upon by the parties, then it must be settled by one of the judges of this court.

The judgment, as thus modified, should be affirmed, without costs to either party.

PECKHAM, J.    The court below and the counsel for the plaintiff upon the argument before us have as it seems to me misconceived the extent and nature of the decisions of this court in the *Rumsey* and *Aldridge* cases (114 N. Y. 423, and 135 id. 83).    While concurring in the views set forth in the very satisfactory opinion of Judge O'BRIEN, I only desire to say a word specially regarding those two cases.    The point therein decided was that the ancestors or grantors of the individual parties to those actions had not by their grants to the railroad company of the strips of land under water or along the line of and below and above high-water mark, deprived themselves of or clothed the railroad company with the character of riparian owners.    We accordingly held that these individual parties could in their character of riparian owners still take title to lands under water which were adjacent to their upland, and the intervention of the railroad embankment did not form an obstacle.    We did not decide that the

railroad company, under the provisions of sections 25 and 49 of the General Railroad Act of 1850, could not take a grant of the title of the state for the purposes of the road from the commissioners of the land office covering land under water upon such terms as they might agree to. In both of the cases there was a grant to the individuals of land under water and they claimed title under their patents from the state. In the *Rumsey* case the defendant had no pretense of title and relied upon the defense that the plaintiffs were not riparian owners, and, therefore, obtained no title by virtue of the patent from the land commissioners. In the *Aldridge* case the defendant had a patent which was attacked as not carrying any title because it was asserted the defendant was not a riparian owner and could take no title by such patent to the lands under water. Although the plaintiff in the *Aldridge* case had a patent it was subsequent to the one granted to defendant. In both cases the patents to the individuals were held good because the patentees were, notwithstanding the grants to the railroad company, held to have continued to be upland proprietors within the meaning of the statute. In the case at bar the plaintiffs have no patent from the state granting to them the title to any lands under water, and they never had any title to such lands and have none now. They simply have those rights as riparian owners which Judge O'BRIEN has described, while the defendant has obtained the title of the state to the lands under a patent good by reason of the provisions of the Railroad Act of 1850.

All concur.

Judgment accordingly.