(35 Misc. Rep. 399.)

## MORGAN v. TURNER et al.

(Supreme Court, Trial Term, Clinton County. July, 1901.)

1. TRUST IN LAND—EVIDENCE TO ESTABLISH.

M. sued to establish title to certain wood lands. The evidence showed that they were sold for taxes of 1847 and 1848 in 1853, and were conveyed to the people by the state comptroller, but that the deed was never recorded. The state in 1882 conveyed the land to P. by a deed recorded at that time, M. paying the consideration therefor. P. gave M. a mortgage to secure his debt for one-half the consideration. On the patent issued there was a memorandum, signed with the initials of P., "Undivided one-half deeded M." P. in 1892 wrote M. a letter, saying that he thought "we" could sell the lot, and requiring a reply. The lands were sold on execution against P., and defendants redeemed from the sale, and claimed under a deed from the owner before a tax sale. *Held*, that the written evidence was sufficient to create an express trust in P. for the benefit of M., under 2 Rev. St. marg. p. 134, §§ 6, 7, providing that no trust shall arise by reason of having paid the consideration for a deed, unless title was taken without consent in the name of another, or the trust had been proved by any writing subscribed by the party declaring the same.

2. SAME—LIMITATIONS.

In an action to establish a trust, limitations was no defense, where the alleged trustee had admitted the trust by a letter written within 10 years from the bringing of the action.

3. TAX SALE—VALIDITY—CURATIVE ACT.

Certain lands of a resident were assessed as nonresident in 1847 and 1848, and were sold for taxes in 1853. Tax Law 1896, c. 908, § 132, declares that every conveyance by the grantees of the comptroller, whose deed had been for two years recorded in the office of the county where

the lands conveyed were located, was conclusive evidence that the sale and all proceedings prior thereto were legal. *Held* that, as the patent from the state to P. was recorded in 1882, in an action brought some 15 years thereafter the sale will be held valid.

4. SAME—CONVEYANCE BY STATE—IMPEACHMENT OF DEED.
    Where a patent from the state to certain lands alleged to have been sold to the state for taxes was valid on its face, it could not be shown that the lands sold were within 20 miles of a certain prison, and that a sale of land for taxes within that radius was forbidden by the statute.

5. EXECUTION SALE—NOTICE—CLAIM OF THIRD PARTY.
    Where at a sale under execution the purchasers had knowledge that a third party claimed an interest in the land, they were not bona fide purchasers, as to the interest of such third party.

Action by Richard Morgan against Martin V. B. Turner and others to establish title to certain land. Defendants alleged title under a deed from the owner before the tax sale mentioned in the opinion. Judgment for plaintiff.

Shedden & Vest, for plaintiff.
S. L. Wheeler, for defendant Turner.
Riley & Healey, for defendant Riley.

HOUGHTON, J. The plaintiff brings this action to establish title to an undivided one-half interest in lot No. 63, township 4, Old Military Tract, in Clinton county. The lot was sold for taxes in 1853, and conveyed by the comptroller to the people. On the 13th of April, 1882, the people, for the consideration of $801, conveyed the premises to one Wales Parsons. The evidence shows that the plaintiff paid the full purchase price for this deed. Before the execution of the deed, and while negotiations for the purchase were pending, Parsons gave to the plaintiff a mortgage for $400, as the plaintiff claims, to secure one-half of the purchase price owing by Parsons. There appears upon the Parsons deed a memorandum, signed by him by his initials, as follows: "Undivided one-half deeded Richard Morgan," this plaintiff. The plaintiff and Parsons owned some real property together, and did business as partners in some matters. On September 22, 1892, Parsons wrote a letter to the plaintiff in which he stated that he thought they could sell the lot for $4,000, and if the plaintiff would sell at that figure they would give an option for a short time, and requesting that plaintiff reply at once. Parsons is dead, and his widow testified that she had heard her husband and the plaintiff talking about the lot in question, but could not recollect the conversation. Plaintiff for some years paid one-half the taxes on the lot. This is all the evidence that plaintiff produces showing how Parsons held the property, or what interest the plaintiff had in it. The complaint alleges that on the completion of the transfer in April, 1882, the agreement between the plaintiff and Parsons was that Parsons should deed an undivided one-half interest to the plaintiff, and that Parsons failed to do so, and that Parsons and plaintiff were co-partners.

The first questions are: Did any trust arise from this transaction

in favor of the plaintiff, and, if so, of what character? And, if the plaintiff had any rights, are they barred by the statute of limitations, which the defendants plead?

The statute in force at the time of the transaction provided that no trust should arise in favor of the plaintiff by reason of his having paid the consideration for the deed, unless the title had been taken without his consent in the name of another, or funds had been used for the purchase of the property in violation of a trust. 4 Rev. St. (8th Ed.) p. 2437, §§ 51–53 (2 Rev. St. marg. p. 728). The purchase was made in the name of Parsons, with the knowledge of the plaintiff, who now insists, however, that there was sufficient done by Parsons to raise in his behalf an express trust to one-half the lot, notwithstanding the provision of section 6 of the statute of frauds that a deed or conveyance in writing, subscribed by the party creating the trust, is a necessity. The provisions of section 7 of that statute allow the trust to be proved by any writing subscribed by the party declaring the same. 4 Rev. St. (8th Ed.) p. 2589 (2 Rev. St. marg. p. 134). But this evidence must be wholly in writing, and sufficient to show that there is a trust, and what it is. Cook v. Barr, 44 N. Y. 156; Hutchins v. Van Vechten, 140 N. Y. 115, 35 N. E. 446. In the latter case the court says:

"A trust cannot be impressed upon what appears by the deed alone to be an absolute title in the defendant, without clear proof showing a beneficial interest in another as well as its nature, character, and extent, and that a failure to execute or deliver the necessary legal evidence to qualify the title is fatal to such a claim."

Is there such clear proof in writing in this case as the law demands of the nature, character, and extent of the trust interest claimed by the plaintiff to have been held by Parsons for his benefit? The case of Hutchins v. Van Vechten, supra, discusses the growth of the provision of the statute of frauds relating to the declaration of trusts, and concludes that the written evidence in that case was sufficient to establish a trust, notwithstanding the lack of a conveyance in writing, subscribed by the party declaring the same, and bases its conclusion upon the amendment to the former provision of the law enacted by chapter 322 of the Laws of 1860. That law, allowing a trust to be declared without formal conveyance, provides that the preceding sections shall not be construed to prevent any declaration of trust from being proved by any writing subscribed by the party declaring the same. Of course, in this case no trust resulted by operation of law. On the contrary, the law specifically prohibited a trust arising from the payment of the purchase price. But that prohibition does not prevent the plaintiff from establishing a trust in Parsons to one-half the lot, if he can do so by any writing subscribed by Parsons declaring the same. In Hutchins v. Van Vechten, supra, the court held that letters and informal memoranda signed by the party were sufficient if they contained enough to show the nature and character and extent of the trust interest. In that case the party holding the title had executed a power of attorney to the law partner of the one claiming a

half interest, authorizing him to sell, accompanied by a letter stating that whatever was realized belonged to himself and the trust claimant jointly and equally, referring him to the other party for further instructions, and also a particular description of the property, designating it as "our property." There were other letters stating that, although the property was wholly in his own name, yet the other party had an interest. In the present case Parsons made a statement upon the deed that an undivided one-half interest had been deeded to the plaintiff, and wrote the plaintiff a letter in which he stated as follows:

"I think we can sell the Saranac Pulp & Paper Company lot 63, township 4, O. M. T. I have agreed to go in and show them the same next Tuesday. I told them the price wanted was $4,000 for the whole lot; if you will sell at that rate, that we would give them an option for a short time,—say thirty days. Please let me hear from you at once, and oblige."

Parsons had evidently told the probable purchaser that he owned only a part of the lot, and must consult the plaintiff with respect to the sale of the whole lot. He refers to the selling in the plural, and says that he told them that the price wanted for the whole lot was $4,000, and that, if the plaintiff would sell at that rate, they would give them an option. The declaration on the deed can be fairly interpreted as a statement, in the absence of any deed, that the plaintiff was entitled to a deed for an undivided one-half of the premises. Do the letter and the declaration on the deed, taken together, constitute enough written evidence subscribed by Parsons to show that he held an undivided half of lot 63 in trust for the plaintiff? Under the authority of Hutchins v. Van Vechten, I think they do, and that the plaintiff has established that, as between him and Parsons, Parsons held an undivided half of the lot in trust for him. If there was any trust at all, it was an express one, subsisting at the time of the writing of the letter in 1892, or created at that time, and the statute of limitations did not begin to run against the plaintiff until the trustee disclaimed or repudiated the trust. Lammer v. Stoddard, 103 N. Y. 673, 9 N. E. 328. If I am right in my conclusion that there was a trust evidenced by the letter of September 22, 1892, certainly at that time he had not repudiated it; and the 10-year statute, being the only one that applied, even if it began in 1892, had not run at the time of the beginning of this action.

The defendant Turner insists that the people had no title to convey to Parsons, because the taxes of 1847 and 1848, for which the sale of 1853 was made, were improperly assessed as nonresident; the then owner being a resident of the town of Saranac, where the property was situated. The lands were wild lands, not occupied by the owner, and the assessors of the town of Saranac had jurisdiction, in some manner, to assess the land. The defendant says he is not prevented by the statute from attacking the sale, because the deed from the comptroller to the people was never recorded in Clinton county, which is a prerequisite to set in motion the limiting acts of 1885 (chapter 448), 1891 (chapter 217), and 1893 (chapter 711). As

finally amended, the limiting act (Laws 1896, c. 908, § 132) provides that "every such conveyance heretofore executed by the comptroller, county treasurer or county judge, and all conveyances of the same lands by his grantee or grantees therein named, which have for two years been recorded in the office of the clerk of the county in which the lands conveyed are located * * * shall be conclusive evidence that the sale and proceedings prior thereto" were according to law, unless action or proceeding be taken within one year from the passage of the act to annul or overthrow it. The primary object of the legislature was to protect the state in its titles acquired through tax sales and conveyances which it may have made by virtue thereof. The deed which the state gave to Parsons was recorded in Clinton county in 1882, long prior to the passage of the act, and recited that the patent was given to convey all the title which the people acquired to the lands in dispute by virtue of the tax sale of 1853. There is no evidence showing there was no deed from the comptroller to the state, but only that whatever deed there may have been was not recorded in Clinton county. The recording of the deed of Parsons, the grantee of the comptroller, for more than two years, I think satisfies the statute, which particularly says that not only every conveyance executed by the comptroller, county treasurer, and county judge, but also all conveyances of the same lands by his grantee, which shall have been recorded, shall be deemed conclusive. The statute is one of limitation, and the original owner and his grantee had reasonable opportunity to attack the sale; and the legislature had the right to declare that the deed of the people, after a certain period, should not be open to attack on the ground that the sale was improperly had, or that the assessors having jurisdiction to assess assessed improperly. Meigs v. Roberts, 162 N. Y. 371, 56 N. E. 838; Marsh v. Association, 25 App. Div. 34, 49 N. Y. Supp. 384. The defendant is not, therefore, in position to question the manner in which the lands were originally assessed, nor to avail himself of his adverse title.

The further point is made that the lands in question are within 20 miles of Clinton prison, and that the letters patent issued to Parsons are void because a sale of lands within that radius of the prison is prohibited by law. The situation of the land with respect to the prison required evidence outside the patent, which was valid upon its face; and the rule is that the invalidity of a patent cannot be established in this manner or in a collateral proceeding, but can be voided only in a direct proceeding or action for that purpose. Blakslee Mfg. Co. v. Blakslee's Sons' Iron Works, 129 N. Y. 155, 29 N. E. 2; Railroad Co. v. Aldridge, 135 N. Y. 92, 32 N. E. 50, 17 L. R. A. 516. Prior to Parsons' death, in 1895, judgments were obtained against him, and an execution issued, and the land in question was sold. The defendants redeemed from that sale, and claimed to have acquired title to the entire lot by virtue of that redemption and conveyance from the purchaser at the sheriff's sale. The answers of the defendants do not allege the acquiring of title in this manner by them, nor do either of them aver that the purchaser at

that sale had no notice of the claim of the plaintiff to one-half part. The legal title was in Parsons, and upon the record he was the owner of the entire lot. It is very likely that the purchaser upon such a sale, without notice of the claim of the plaintiff, would obtain title to the entire property. It is questionable whether or not the pleadings are sufficient to enable the defendants to show that the original purchaser stood in this relation. The character of purchaser, under the statute, is an independent one; and it is necessary for him to plead and prove not only that he was a purchaser of record, but that he was a purchaser in good faith and for a valuable consideration. He is bound, therefore, to deny by his answer notice, although notice is not charged against him, and to prove it, because these are new matters and in defense. Seymour v. McKinstry, 106 N. Y. 242, 12 N. E. 348, 14 N. E. 94. There is an entire absence of proof that the original purchaser at the execution sale did not know of the claim of the plaintiff to one-half of the lot, except that the plaintiff himself says he was not present at the sale, and did not give such notice. But an answer to it all is that the defendants themselves knew of the plaintiff's claim at the time they purchased the rights acquired under the execution sale, or at least had enough knowledge as to some claim of the plaintiff to put them upon inquiry, and to destroy their character of bona fide purchasers, without notice, as to the one-half interest of the plaintiff. By such purchase they therefore acquired only the half owned by Parsons. The letter of Riley to the plaintiff shows that he had knowledge that the plaintiff made some claim with respect to the lot, and was endeavoring to adjust it, and Turner was notified by the plaintiff himself, before he made his purchase, that the plaintiff claimed one-half.

If I am right in my conclusions, the plaintiff is entitled to the decree asked for in the complaint, with costs. A decision and judgment may be submitted accordingly.

Judgment for plaintiff, with costs.