action for malicious prosecution, even though express malice is proved. Burt v. Smith, 181 N. Y. 5, 73 N. E. 495. If the defendant had knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he had lawful grounds for prosecuting the plaintiff, probable cause was present.

The facts are substantially as follows, viz.: On the morning of June 8, 1903, defendant discovered that a valise belonging to him and containing over $800 had been stolen the previous night. He called upon the police department, who sent a detective to investigate the matter. Plaintiff, who was an employé of defendant, together with other employés, all of whom seem to have had access to the room where the valise had been left, was called before the detective and defendant, and was questioned with regard to the matter. He answered in an insolent and apparently somewhat evasive manner, and defendant, upon the advice of the detective, told the latter to arrest plaintiff. The latter was examined before the police magistrate and discharged for want of proof against him. Thereafter the defendant and one Bonogara, who was "very nervous," according to defendant's testimony, searched the house again and found the valise on the roof, and subsequently a girl named Maria Rosetti told defendant that she had seen plaintiff running up to the roof with this valise in his hand. Thereupon defendant had plaintiff arrested the second time, and after a trial in the Court of General Sessions plaintiff was acquitted and discharged.

It seems to us that, while the jury might well have found probable cause such as to justify a reasonable man in the belief that he had lawful grounds for prosecuting plaintiff, still the facts may be said to be capable of opposing inferences, and that the question of probable cause was therefore one for the jury, whose finding on the subject is conclusive. Wass v. Stephens, supra.

The amount of the verdict, $450, was not excessive damages, and we are of the opinion that the court below was justified in denying the motion for a new trial.

The order should be affirmed, with costs and disbursements.

---

(61 Misc. Rep. 199.)

### LALLY v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Special Term, Westchester County. November 23, 1908.)

1. NAVIGABLE WATERS (§ 37*)—LANDS UNDER WATER—ACTION FOR—EVIDENCE —WEIGHT.

   Evidence *held* to show that the lands under water sued for were those granted to defendant by the state.

   [Ed. Note.—For other cases, see Navigable Waters, Dec. Dig. § 37.*]

2. NAVIGABLE WATERS (§ 37*) — LANDS UNDER WATER—RAILROADS—ACQUISITION OF LAND.

   Under Railroad Law 1850 (Laws 1850, pp. 223, 235, c. 140) §§ 25, 49, a railroad could acquire lands under water for its purposes and the state's power to make such a grant was governed only by the company's reasonable necessity in discharging its duty to the public.

   [Ed. Note.—For other cases, see Navigable Waters, Dec. Dig. § 37.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

113 N.Y.S.—12

3. NAVIGABLE WATERS (§ 37*)—DISPOSAL OF STATE LANDS—SUBMERGED LANDS—
GRANTS—APPLICATIONS—SUFFICIENCY—PRESUMPTIONS.

In an action involving the right to land under water under conflicting
grants from the state, it must be assumed that defendant's formal applica-
tion to the commissioners of the land office was in proper form and suffi-
cient to confer jurisdiction upon that body to entertain the proceeding and
make the grant.

[Ed. Note.—For other cases, see Navigable Waters, Dec. Dig. § 37.*]

4. PUBLIC LANDS (§ 163*)—DISPOSAL OF STATE LANDS—PATENTS—COLLATERAL
ATTACK.

A patent from the state is not assailable collaterally unless void on
its face, and hence a patent to a railroad company to lands under water
regular on its face is not assailable by a junior patentee's successor be-
cause the application was not in proper form, or did not ask for all that
was granted, or that the lands were not used for railroad purposes; the
patent being assailable only in a direct proceeding by the people, where no
fraud or misrepresentation in procuring the patent is shown.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 163.*]

5. PUBLIC LANDS (§ 163*)—DISPOSAL OF STATE LANDS—LAND GRANTS—FAIL-
URE TO USE FOR RAILROAD PURPOSES—EFFECT.

A grant of public lands for railroad purposes is not invalid as of the
time made because they are not subsequently used for such purposes.

[Ed. Note.—For other cases, see Public Lands, Dec. Dig. § 163.*]

Action by Lavinia Lally against the New York Central & Hudson
River Railroad Company. Judgment for defendant.

Lavinia Lally, in pro. per.
Albert H. Harris, for defendant.

TOMPKINS, J. The plaintiff is the owner and in possession of
the uplands immediately adjoining the defendant's railroad tracks
which run north and south, and parallel to the Hudson river in and
through the city of Yonkers, which uplands are known as Nos. 13 and
11 Ravine avenue in said city of Yonkers. The defendant's railroad
tracks occupy a strip of land 66 feet wide, which is located between
the plaintiff's said uplands and the waters of the Hudson river. In
October, 1894, James Jackson, a former owner of the plaintiff's up-
lands, purchased from the state of New York the lands under water
adjacent to the defendant's railroad tracks, and described in the com-
plaint as parcels Nos. 1 and 2, and the state conveyed to said Jack-
son said lands under water by letters patent, dated October 4, 1904,
and recorded in the Book of Patents in the office of the Secretary of
State. The defendant's railroad tracks were built in or about the year
1849, and ever since the said strip of 66 feet has been used and oper-
ated by the defendant and its predecessor for railroad purposes. The
defendant claims, in addition to the 66 feet upon which its tracks are
built as aforesaid, that it is the owner of a strip of land under water
67 feet in width adjacent to its said tracks, which claim is made un-
der a grant by the people of the state of New York by letters patent
issued on or about December 26, 1873, and recorded in the office of the
Secretary of State in book 42 of Patents. These 67 feet claimed by
the defendant are a part of the lands under water claimed to be owned
by the plaintiff under the grant by the state to James Jackson, already

referred to, and this action is brought by the plaintiff to establish her title to the 67-foot strip of land under water claimed by the defendant under its prior grant, and to have the said grant to the defendant set aside as to the lands claimed by the plaintiff.

It seems that the state made two grants—one to the plaintiff's predecessor, and another to the defendant, of the same lands under water —the grant to the defendant having been made in the year 1873, and to the plaintiff's predecessor in 1894; and the question involved in this case is as to the validity of the prior grant to the defendant. If that grant is valid, it must follow that the plaintiff's grant was ineffective to convey any interest in the lands under water, already conveyed to the defendant. The plaintiff's claim is that the defendant's grant of 1873 was obtained from the land commissioners of the state by false and fraudulent representations, that the property thereby granted was for the purposes of its railroad as a new or additional location, and that the grant was made without the defendant having any apparent or real necessity for the same, and was contrary to the statute in that the said lands have never been used by the defendant for the purposes of its road, or for any purpose, and that said lands were not necessary for the construction, maintenance, and accommodation of its railroad, and that the grant was never authorized by the land commissioners, and that the letters patent were delivered to defendant without a proper application having been made therefor.

It is admitted that no part of the defendant's present railroad is upon any of the lands under water in question, and that the westerly retaining wall of its railroad tracks is along the west side of said track, and parallel therewith; and it is also admitted, at least the plaintiff's testimony is not disputed, that since 1903 or 1904 she has maintained a crib or dock upon and over a part of the 67-foot strip of land under water, and that it was in a proceeding brought by her in the Supreme Court against the defendant for a peremptory writ of mandamus to compel the defendant to construct a bridge from her uplands to the water line over the defendant's tracks that she first had notice of the defendant's claim to the said lands under water.

The grants made by the people of the state of New York to the plaintiff's predecessors in the title of the uplands contain the following exceptions and reservations; as to one parcel of land under water, the exception reads:

"Excepting and reserving, however, from the above described premises all of the land and property rights of the New York Central and Hudson River Railroad Company."

With reference to the other parcel, the reservation or exception is as follows:

"Excepting thereout all the lands and property rights of the New York Central and Hudson River Railroad Company."

Now the original owner of the uplands in 1840 or thereabouts was one James Blackwell, and he in 1847 conveyed to the Hudson River Railroad Company, the defendant's predecessor, a strip of land 2,685 feet in length, and from 60 to 80 feet in width. Of this strip, a little more than 1 acre was above high-water mark, according to the deed

from Blackwell, and a little more than 3 acres were below high-water mark. Blackwell had never obtained a grant of the lands below high-water mark. Soon after acquiring the lands from Blackwell, the railroad company filled in a part of the strip and constructed one track, and operated its cars on that one track. Later, the balance of the strip of 66 feet, which is now the railroad track, was filled in, and about 1869 the Hudson River Railroad Company was consolidated with the New York Central Railroad Company, and became the New York Central & Hudson River Railroad Company, and about 4 years later that company made application to the state for a grant of lands below high-water mark, and then it was that the grant of 1873, the validity of which is now disputed, was made, and it must be assumed that that grant covered a part at least of the lands below high-water mark which had been conveyed by Blackwell, and the first question is whether that grant conveyed more of the lands under water than had previously been described in Blackwell's deed, and which now constitute the 66 feet upon which the defendant's tracks are located, because the 67 feet now in dispute are all beyond and west of these tracks, and the plaintiff's claim is that the exceptions and reservations contained in the grants to her predecessor had reference only to the parts of the land under water within the said 66 feet of roadbed.

The Hudson River Railroad Company was incorporated in 1846 for the purpose of building and operating a single, double, or treble railroad between New York and Albany, and in June, 1868, filed in the office of the clerk of Westchester county a map of its road as it was then being operated, and a recital of a resolution adopted by its board of directors for certain proposed alterations of its railroad, and embracing lands in addition to those which had already been acquired, including the 66-foot strip theretofore purchased from Blackwell. In November, 1873, the railroad company made application to the commissioners of the land office for "a confirmation of the water rights along the line of its route acquired by the said company under the charter of the Hudson River Railroad Company." In December of the same year the commissioners of the land office adopted the following resolution:

"Resolved: That the application of the New York Central and Hudson River Railroad Company be granted upon the payment into the state treasury the sum of five hundred dollars and the expense of the visiting committee, and that the same form of grant be used as in the grant of the Spuyten Duyvil and Port Morris Railroad Company, and that the description of the lands under water hereby granted, embraces such lands under water within the limits of the New York Central and Hudson River Railroad (late Hudson River Railroad) as are shown on the maps as filed in the offices of the respective county clerks of Westchester, Putnam, Dutchess, Columbia and Rensselaer counties, a copy of which to be approved by the State Engineer and Surveyor, and shall be annexed to the letters patent for the grant."

On the 26th day of December, 1873, the letters patent were executed, and purported to convey the following:

"All those certain lots, pieces or parcels of land, situate lying and being in our county of Westchester, along the waters of the Hudson river and its estuaries, into which the tide sets and below original high water line, embraced within the boundary lines of the Hudson River Railroad (now the New York Central and Hudson River Railroad) and within the boundary lines of a

contemplated change in said railroad at one place, as all said boundary lines are shown upon the map thereof, filed in the office of the clerk of our said county, the 11th day of June, 1868, and also filed with the said commissioners of our land office on the following day, and upon the map hereto annexed."

The maps referred to in the foregoing resolution and grant were produced from the Secretary of State's office and the register's office of Westchester county, and clearly and unmistakably show that the grant to the defendant included the 67-foot strip of land under water now claimed by the plaintiff. The authenticity and integrity of these maps are questioned by the plaintiff, but it seems to me that they bear every evidence of genuineness, and that the testimony respecting them fully establishes the fact that they are the same maps that were originally filed with the Secretary of State and in the office of the clerk of Westchester county, and that they have not been changed or altered since they were originally filed. The testimony of the custodians of these maps was not impeached, and the maps themselves have every appearance of being the originals. The grant, therefore, by the state to the defendant included not only the lands under water within the 66-foot strip upon which the railroad had already been constructed, but also the additional lands under water required for the contemplated changes, and included the 67-foot strip in question, so that the question now is, whether that was a legal grant and is now valid, as against the plaintiff. The defendant and its predecessor, the Hudson River Railroad Company, had a right to acquire lands under water for the purposes of their railroads. Sections 25 and 49 of the Railroad Law of 1850 (Laws 1850, pp. 223, 235, c. 140), and Johnson v. Railroad Company, 49 N. Y. 455. The only limit to the power of the state to make such a grant to the defendant was the reasonable necessity of the corporation in the discharge of its duty to the public. Matter of New York Central & Hudson River Railroad Company, 77 N. Y. 248.

It must be assumed for the purposes of this action that the formal application made by the defendant to the commissioners of the land office was in proper form, and sufficient to confer jurisdiction upon that body to entertain the proceeding and make the grant which was made.

The grant or conveyance which was executed by the Governor of the state and attested by the Secretary of State recites the making of the application, the settlement of the terms, and the adoption of a resolution by the commissioners of the land office granting the application of the defendant upon the payment of the price agreed upon, and fixing the form of the grant, and referring to the maps filed in the office of the clerk of the county of Westchester, a copy of which was to be approved by the State Engineer and Surveyor and annexed to the letters patent for the grant, and thereupon the letters patent were executed and delivered, and they are regular on their face, and are not now subject to attack by the plaintiff on the ground that the application was not in proper form or did not ask for all that was granted.

It has been held in this state, and it seems to be the settled rule, that a grant or patent from the state is not assailable collaterally unless void on its face. Blakslee Manufacturing Co. v. E. G. Blakslee Sons Iron Works, 129 N. Y. 155, 29 N. E. 2. In the case of Saunders v.

New York Central & Hudson River Railroad Company, 144 N. Y. 75, 38 N. E. 992, 26 L. R. A. 378, 43 Am. St. Rep. 729, which involved the defendant's title to another parcel of land 67 feet in width, which was conveyed to the defendant by the same grant or patent of December 26, 1873, the court held that the plaintiff could not impeach the grant collaterally unless it was void upon its face, and said, "and the recitals in it are prima facie evidence of its regularity and of compliance with the preliminary requisites of the statute." See, also, Morgan v. Turner, 35 Misc. Rep. 399, 71 N. Y. Supp. 996. In the case at bar the patent or grant is valid upon its face, and its invalidity can only be established in a direct proceeding or action brought in the name of the people of the state of New York for that purpose, involving the validity of the whole grant. And this rule, it seems to me, must apply also to the plaintiff's claim that the grant is invalid, because the part of the lands under water now in dispute has never been actually used by the defendant for railroad purposes.

These lands were acquired by and granted to the defendant for railroad purposes, and whether they have been actually used since then for such purposes cannot effect the validity of the grant at the time it was made. It may be that, in a proper action in the name or on behalf of the people of the state, it could be decreed that the defendant had forfeited its rights under the grant by its failure to use the lands for railroad purposes, but that result cannot be accomplished in this action. The question of the necessity of the lands for public use was properly before, and determined by, the commissioners of the land office, and they, acting within the scope of their authority under the statute, determined that the lands were necessary for railroad purposes, and that determination cannot be reviewed in an action or proceeding to which they or the people of the state of New York are not parties, or at the suit of a junior grantee or patentee who had no interest in the lands under water at the time of the granting of the first patent.

There is no evidence in this case to show that any fraud or deception was practiced by the defendant upon the commissioners of the land office respecting the necessity for railroad purposes of the said lands, or that there was any concealment or misrepresentations that would justify this court in a collateral proceeding to annul and set aside the grant, even if it had the power.

As I have already observed, the commissioners of the land office had jurisdiction to entertain the defendant's application and to consider it upon its merits, and whether the lands under water were necessary for the purposes of the defendant's railroad was a question for the commissioners to determine upon the evidence before them, and their decision is not subject to review in an action such as this, by an individual. Moreover, in the Saunders Case, the Court of Appeals expressly held that this very grant of 1873, the validity of which was attacked in that suit, was a valid grant of the land from the state. In the grants of land under water, under which the plaintiff claims title in this action, the state expressly reserved and excepted therefrom all of the lands and property rights of the defendant, thereby recognizing

and ratifying the grant theretofore made to the defendant railroad company.

I am aware of the fact that the learned Appellate Division of our Department in this very case has held that the rule that, where evidence dehors a land patent from the state is required to show the invalidity thereof, the patent can only be avoided in a direct proceeding to review the action of the land commissioners, or by a suit in equity to vacate the patent, does not prohibit a suit in equity by an individual to remove a cloud on his title created by such patent, but I do not understand that the learned Appellate Division by that announcement decides that a junior grantee or patentee who had no interest in or claim to the land at the date of the granting of the senior patent can by a suit in equity set aside the earlier grant, because such an interpretation of that decision would be in conflict with the case of Biddle Boggs v. Mining Company, 14 Cal. 279, and the other cases cited in the opinion of the Appellate Division, Lally v. N. Y. Central & Hudson River Railroad Co., 123 App. Div. 35, 107 N. Y. Supp. 868. For instance, in the case of Biddle Boggs v. Mining Company, the court said, "Individuals can resist the conclusiveness of the patent only by showing that it conflicts with the prior rights vested in them;" but in any event, in my opinion, the grant to the defendant was valid, and, being prior to the plaintiff's grant, she has no title to the 67-foot strip in question, under the grant subsequently made to Jackson, the former owner of her uplands.

My conclusions on the whole case are that the maps produced from the office of the Secretary of State and county clerk are genuine and true copies of the map attached to the original grant to the defendant, and that they were made and filed in accordance with the statute, and that the grant of 1873 to the defendant, including the lands now claimed by the plaintiff, was and is valid, as against the plaintiff, and was prior to the plaintiff's grant, which expressly excepted the lands conveyed to the defendant, and that the plaintiff cannot maintain this action; and I direct judgment accordingly.