HENRY J. GUCKER, Appellant, *v.* THE TOWN OF HUNTINGTON et al., Respondents.

CHRISTINA A. KOCH, Appellant, *v.* THE TOWN OF HUNTINGTON et al.. Respondents.

ELLA R. BUNCE et al., Appellants, *v.* THE TOWN OF HUNTINGTON et al., Respondents.

ALBERT GUCKER, Appellant, *v.* THE TOWN OF HUNTINGTON et al., Respondents.

44

(Argued April 25, 1935; decided May 28, 1935.)

*Thomas F. Magner* for appellants. Plaintiffs' actions to remove as clouds on title the quitclaim deeds were the proper and the only remedy for the plaintiffs to obtain redress for the deprivation of their riparian rights. (*Remington Paper Co.* v. *O'Dougherty,* 81 N. Y. 474; *Ward* v. *Dewey,* 16 N. Y. 519; *Crooke* v. *Andrews,* 40 N. Y. 547; *Radcliff* v. *Rowley,* 2 Barb. Ch. 23; *Shaw* v. *Dwight,* 27 N. Y. 244.) Riparian rights were possessed by the plaintiffs as upland owners. (*Matter of City of*

*New York*, 168 N. Y. 134; *Barnes* v. *Midland R. R. Terminal Co.*, 193 N. Y. 378; 218 N. Y. 91; *People ex rel. Gratwick* v. *Commissioners of Land Office*, 202 App. Div. 240; *Stewart* v. *Turney*, 203 App. Div. 486; *Hinkley* v. *State*, 234 N. Y. 309; *Tiffany* v. *Town of Oyster Bay*, 234 N. Y. 15; *People* v. *Mould*, 37 App. Div. 35; *Matter of Jaquino* v. *Ormond*, 217 App. Div. 76; *White* v. *Nassau Trust Co.*, 168 N. Y. 149; *Sage* v. *Mayor*, 154 N. Y. 61; *Rumsey* v. *N. Y. & N. E. R. R. Co.*, 133 N. Y. 79.) The action of the town in filling in the sand bar was a trespass against the plaintiffs, as well as an unlawful act. (*Matter of Public Service Comm.* [*Montague St.*], 224 N. Y. 211; *Matter of City of New York*, 168 N. Y. 134; *People ex rel. Palmer* v. *Travis*, 223 N. Y. 150; *Matter of City of New York* [*Jamaica Bay*], 256 N. Y. 382; *Montgomery* v. *Portland*, 190 U. S. 89; *Philadelphia Co.* v. *Stimson*, 223 U. S. 605; *St. Louis* v. *Rutz*, 138 U. S. 226; *Yates* v. *Milwaukee*, 10 Wall. 497; *Rumsey* v. *N. Y. & N. E. R. R. Co.*, 133 N. Y. 79.) The action of the town in filling in the sand bar extended the westerly boundary of plaintiffs' uplands to the high-water mark in the navigable waters on the exterior of the sand bar in front of their respective uplands. (*Mulry* v. *Norton*, 100 N. Y. 424.)

*Otho S. Bowling* and *Isaac R. Swezey* for Town of Huntington, respondent. The actions do not involve the point whether plaintiffs' riparian rights have been adversely affected. (*Tiffany* v. *Town of Oyster Bay*, 234 N. Y. 15.) The raising of the bar did not transfer its title. (*Lowndes* v. *Huntington*, 153 U. S. 1.) It makes no difference whether the words in the Appellate Division opinion are consistent or inconsistent. The opinion is no substantial part of the record. (*Koehler* v. *Hughes*, 148 N. Y. 507.)

*William M. Sullivan* for Mary C. DeBrabant, respondent. The determination herein is not *res adjudicata* as to an action for damages or for the restoration of appel-

lants' alleged riparian rights. (*Koehler* v. *Hughes*, 148 N. Y. 507; *Donahue* v. *N. Y. Life Ins. Co.*, 259 N. Y. 98; *Silberstein* v. *Silberstein*, 218 N. Y. 525.)

CRANE, Ch. J. The plaintiffs own the upland at Little Neck in the town of Huntington, facing on Centerport Harbor. Their property faces to the west, Centerport Harbor running about northwest and southeast. They own to high-water mark, for Centerport Harbor, a branch of Long Island Sound, is tidal water. The plaintiffs have riparian rights, which means that they have access to navigable water in front of their property. No person or even the town of Huntington can obstruct or interfere with these riparian rights.

In front of the plaintiffs' premises, a short distance out from shore, there was a sand bar, described in the findings of the trial court as follows: "That Northport Bay is an arm of the sea, the tide ebbs and flows therein, and the waters of same are navigable. * * * Under the waters of said bay is a sand bar [which] * * *, until the same was filled in as hereinafter set out, was and from time immemorial had been under the waters of the bay, and during normal high tide was covered by water sufficient so that boats of light draft could float thereover. * * * It had always been below the high water and was unoccupied and incapable of occupation."

The law applicable to such a situation is not in dispute. The town of Huntington owned the land under water, including the sand bar, but this gave the town no more right to raise the sand bar above water and make it dry land than it would have the right to fill in the entire harbor and make it dry land if navigation or riparian rights are thereby destroyed. The plaintiffs had the riparian rights to go out over this sand bar at high tide with their boats to reach the navigable part of the harbor. There seems to be no answer to this contention, and all the authorities of this State sustain this right.

(*Tiffany* v. *Town of Oyster Bay*, 234 N. Y. 15; *Matter of City of New York*, 168 N. Y. 134, 143; *Hinkley* v. *State*, 234 N. Y. 309, 318; *Montgomery* v. *Portland*, 190 U. S. 89, *Matter of Public Service Comm.* [*Montague St.*], 224 N. Y. 211.)

The town of Huntington deliberately and intentionally pumped sand and gravel on this sand bar, raising it to the height of one foot above high water, and extending it north and south parallel to the plaintiffs' upland for a long distance. The answer to the plaintiffs' objection is " If you want to reach navigable water in front of your property, row down a quarter of a mile and go round the point of the sand bar which we have filled in." This is no legal answer. The plaintiffs, by the law of this State, had riparian rights in front of their property, that is, they could go out in their boats or by pier to navigable water. The town cannot prevent this as it has attempted to do. It denies their riparian rights, says that they have no interest whatever in this built-up land, and has forced them off the property. The town has turned water into land, and by so doing attempts to destroy the plaintiffs' access to navigable water, or their *property interest* in and over the land which it has created.

The trial court further found: " 24. That pursuant to such agreement defendants DeBrabant and the Town of Huntington caused such fill to be made and thereby the surface of the portion of said sand bar so indicated was raised to the height of one foot above the waters of the bay at mean high tide." Inconsistent with this finding the trial court also made the following findings:

" 26. That said sand bar when so filled in did not deprive plaintiff of access to the deeper waters of the bay.

" 27. That such sand bar as so filled in did not deprive plaintiffs of access to the waters of the bay actually navigable."

And as a conclusion of law: " 7. That the filling in of said sand bar did not deprive plaintiff of any of his rights as riparian owner." The trial court must have had in mind that the plaintiffs had the privilege of taking their boats down to about a quarter of a mile to go around the fill, because it is beyond dispute that the plaintiffs cannot reach navigable water directly in front of their shore. The exhibits themselves indicate this impossibility.

The Appellate Division affirmed these findings of the trial court and also its judgment, but wrote an opinion indicating disagreement with these conclusions, for the court said: " It is undisputed that the said sand bar, during the period of its formation and up until January 30, 1930, had been of gradual and imperceptible growth, and, until 1930, was always below high water. It appears that, in 1930, the defendant DeBrabant, with the consent of the Town of Huntington, dredged from the bottom of the bay outside the sand bar thousands of cubic yards of sand and gravel, which were deposited on top of the bar until it was raised, for an agreed distance, to a height of at least one foot above high water mark; as a result of which plaintiffs were unable to navigate motor boats, sail boats and row boats over the bar from their uplands to the deeper waters of the bay, as they had previously done, *and were thereby deprived of their rights as riparian owners.*" (241 App. Div. 494, 495, 496.) The only answer the respondents have to this opinion of the Appellate Division is, to say that " We think this was an inadvertence, a case of not too careful editing."

We must, therefore, conclude that, in spite of the affirmance, the Appellate Division was of the opinion that the plaintiffs were deprived of their riparian rights by the action of the town of Huntington.

Why then is it that the plaintiffs have not succeeded in having these riparian rights declared to exist. Why have the courts not given them the right to cross this sand fill to reach high water? It is said they have chosen the

wrong remedy, and that another action must now be brought to establish these riparian rights which the Appellate Division say exist.

It seems that the town of Huntington and an upland owner, named DeBrabant, whose shore front approached the sand bar at its northern extremity, entered into an agreement regarding this fill. DeBrabant claims to have had some property rights in this sand bar and these were released and quitclaimed to the town of Huntington. These deeds were of record, and the town of Huntington commenced operations and carried them out, acting under the claim of ownership through these deeds. The trial court so found:

" 15. That pursuant to the agreement aforesaid, on or about the 30th day of January, 1930, defendant DeBrabant duly signed, acknowledged and delivered to the Town of Huntington a deed in quitclaim form, releasing to the Town of Huntington any right, title and interest which she might have in such sand bar.  *  *  * "

That the description of the sand bar in said deeds was as follows: " Together with all the right, title and interest of the party of the first part to that certain bar or strip of land to the end thereof projecting into Centerport Inlet and Harbor, and lying in front of and adjacent to the land above described."

*The trial court also found:* " That pursuant to such agreement defendants DeBrabant and the Town of Huntington caused such fill to be made and thereby the surface of the portion of said sand bar so indicated was . raised to the height of one foot above the waters of the Bay at mean high tide."

Thus, when the town filled in this land it claimed the right to do so under these deeds and agreement. How did the plaintiffs know when they commenced these actions that the court would decide that the deeds conveyed no title, as the town owned the land under water by reason of colonial grants? The plaintiffs properly came into

equity seeking to set aside the title claimed from DeBrabant and others, and to establish that the deeds of record gave the town no power to take their riparian rights. Being in equity, and the court undertaking to determine the rights under these deeds and the title of the town, there is no reason that I can see why the court should not have completed its work and decided the plaintiffs' riparian rights in the land over the bar as it now exists. What is to be gained by requiring another lawsuit? What reason can there possibly be given for sending these litigants back to some other form of action to do what should have been done upon this evidence? Repeatedly have we said that rights of property were more sacred than mere forms of procedure, and that the pathway to the courthouse is not as important as what happens when we get there. Equity had jurisdiction of this case. It had before it all the evidence and all the parties. The riparian rights of the plaintiffs had been established and found by the Appellate Division, at least the court said so. A decision to this effect could have been made. That this form of action was appropriate under these circumstances, see *Remington Paper Co.* v. *O'Dougherty* (81 N. Y. 474); *Crooke* v. *Andrews* (40 N. Y. 547); *Ward* v. *Dewey* (16 N. Y. 519, 522).

Another matter to be considered is that by reason of this fill the plaintiffs claimed to own this land in fee, under the law laid down in *Mulry* v. *Norton* (100 N. Y. 424). The courts below have found against them in this particular. The action, however, was properly in equity to establish this fee interest, and, although the court could not give the plaintiffs all they asked, there is no doctrine I know of that prevents the court from giving a lesser right. I never yet heard that a court of equity, which might not be able to decree title in fee, was powerless to decree a life estate or a tenancy for years. Such is this case, and the plaintiffs should not be relegated to another action to establish their riparian rights.

In each action, the judgment of the Appellate Division and that of the Trial Term should be reversed, and a new trial granted, with costs to abide the event.

HUBBS, LOUGHRAN and FINCH, JJ., concur; LEHMAN, O'BRIEN and CROUCH, JJ., dissent.

Judgments reversed, etc.