RIVIERA ASSOCIATION, INC., Plaintiff, *v.* TOWN OF NORTH HEMPSTEAD et al., Defendants.

Supreme Court, Special Term, Nassau County, January 3, 1967.

*Schiffmacher, Rochford & Cullen* for plaintiff. *Robert C. Meade, Town Attorney,* for Town of North Hempstead, defendant. *William R. Bennett* for George L. Augustus, defendant.

BERNARD S. MEYER, J. Plaintiff owns land which fronted and in part may still front on the shore of Manhasset Bay. About 25 feet north of the mean high-water line plaintiff erected a seawall. In 1954 plaintiff built a boat slip out from the shore some 125 feet, and some time thereafter filled the area to the east and west of the boat slip in front of the seawall and running south of it about 100 feet. Defendant town in 1965 advertised for bids for purchase of property inclusive of the filled area and the land under water beneath the boat slip and in front of the filled area, encompassed within a 125 by 260-foot lot known as Lot 639, Block 59, Section 4, on the Nassau County tax map. Defendant Augustus submitted the highest bid of $17,875 and the town entered into a contract with him for conveyance subject to " riparian rights, if any, of abutting upland owners " and to " permissive referendum if required by law ". Both the advertisement for bids and the making of a contract with

Augustus as highest bidder were authorized by resolution of the Town Board, in which Lot 639 was described by metes and bounds.

By this lawsuit, brought pursuant to section 51 of the General Municipal Law, plaintiff seeks to enjoin the sale and conveyance as an illegal act. A temporary injunction was granted (N. Y. L. J., Nov. 3, 1965, p. 21, col. 5), but, of course, that determination " does not constitute the law of the case or an adjudication on the merits " (*Walker Mem. Baptist Church* v. *Saunders,* 285 N. Y. 462, 474). Plaintiff now moves for summary judgment, pointing out that defendant Augustus' answer admits that he does not own any upland adjacent to Lot 639 and that in agreeing to purchase the property " he was acting as an individual on his own behalf for his own private purposes and no public purpose was or is involved and if the property is conveyed to him it will not be for a public use ". Defendant Augustus cross-moves for summary judgment; defendant town asks denial of both motions on the ground that there are triable issues of fact. The motion is denied and the cross motion is granted.

Before discussing in detail the main contentions of the parties, some subsidiary points should be disposed of. First, though defendants by denying the allegations of paragraphs Eighth and Ninth of the complaint have raised an issue concerning ownership of the 25 feet between the seawall and the mean high-water line, the issue is irrelevant because if the town is selling more than it owns the public injury or waste necessary to bring section 51 of the General Municipal Law into play, *Ahern* v. *McNab* (7 A D 2d 546) does not exist. Second, arguments based upon plaintiff's riparian rights are irrelevant. Short of conduct estopping plaintiff (which is not suggested in the papers, though permission was given to file additional affidavits on this issue) or merger by acquisition of title (which is negatived by the allegation in paragraph Seventh of the complaint that the " Town was and still is the owner " of Lot 169), plaintiff's riparian rights continue notwithstanding the placing of the fill, and this would be true whether the fill was or was not authorized by the town (*Gucker* v. *Town of Huntington,* 268 N. Y. 43; *Appleby* v. *City of New York,* 235 N. Y. 351; *Tiffany* v. *Town of Oyster Bay,* 234 N. Y. 15; *Saunders* v. *New York Cent. & Hudson Riv. R. R. Co.,* 144 N. Y. 75; *Harway Improvement Co.* v. *Partridge,* 203 App. Div. 174, affd. 236 N. Y. 563). Defendant Augustus will, therefore, take subject to plaintiff's riparian rights. Third, though as hereafter developed, a conveyance to plaintiff as upland owner would unquestionably be authorized, plaintiff's status as upland owner gives it no pre-

emptive right, absent a statute so providing (*Mayor, etc. of City of N. Y.* v. *Hart*, 95 N. Y. 443, 452; *Nott* v. *Thayer*, 2 Bosw. 10.) Subdivision 7 of section 75 of the Public Lands Law which gives pre-emptive right to upland owners does not help plaintiff because that law deals only with State lands (see Public Lands Law, §§ 3, 6, 7, 8, and 9 among others). The waters and bed of Manhasset Bay are owned by the town by virtue of the Kieft and Dongan grants and were never State-owned (*Grace* v. *Town of North Hempstead*, 166 App. Div. 844, affd. 220 N. Y. 628; see *Gucker* v. *Town of Huntington*, 268 N. Y. 43; *Roe* v. *Strong*, 107 N. Y. 350, 358). Indeed plaintiff's complaint states, as noted above, that " the defendant Town was and still is the owner " of the lands in question. Plaintiff, therefore, has no pre-emptive right. Fourth, though a " dual political system " such as was referred to in *Knapp* v. *Fasbender* (1 N Y 2d 212) exists in the Town of North Hempstead (Nassau County Civil Divisions Act, § 301.0; L. 1939, ch. 273, as amd.) its existence has no bearing on the instant case, because the town holds the lands in question in its corporate capacity notwithstanding that the original grants were to named individuals and their successors (*North Hempstead* v. *Hempstead*, 2 Wend. 109; see *Town of Brookhaven* v. *Smith*, 188 N. Y. 74), and because only the Town Board and not the " board of trustees " has been given power of sale over town lands.

We are brought thus to plaintiff's main contentions which are (1) that the filled portion of Lot 639 retains its character as land under water, and (2) that as land under water the entire lot is held by the town in public trust and cannot be conveyed except for a public purpose or to the upland owner. The argument that filled lands retain their character as land under water is answered, and all but one of the cases cited by plaintiff on that point are disposed of, by the following passage from the decision of the Court of Appeals in *Matter of City of New York* (*12th Ave.*) (295 N. Y. 415, 429): " Moreover, the rule that ' land originally under water is treated as land under water even after it is filled ' is not an inflexible one and was not stated to be such. (*City of New York* v. *Wilson & Co.*, 278 N. Y. 86, 97.) The cases cited generally in support of that statement are decisions to the effect that an upland owner — as in the *Wilson* case — cannot acquire title to land under water owned by the State merely by filling it in without a grant or authorization from the State (see cases cited in *City of New York* v. *Wilson & Co.*, supra, at p. 97) and in *Hinkley* v. *State of New York* (234 N. Y. 309, 319), or that the riparian rights, as distinguished from ownership, of an upland owner as regards adjacent land

under water may continue even after the solid filling in of such land under water (cf. *Tiffany* v. *Town of Oyster Bay*, 234 N. Y. 15; *City of New York* v. *Third Ave. Ry. Co.*, 294 N. Y. 238). To that extent, and for sound reason, the act of filling in is denied operative effect. But those decisions do not establish that land originally under water necessarily retains its character as such for all time and for all purposes. It has thus been recognized that land under water may lose its ' character of foreshore ' at least for some purposes, with consequent changes in rights and legal relations, where the filling in is pursuant to permission or grant. (Cf. *Tiffany* v. *Town of Oyster Bay*, *supra*, at p. 20; *Williams* v. *Mayor*, *supra* [105 N. Y. 419]; *Appleby* v. *City of New York*, *supra* [235 N. Y. 351], at pp. 361, 362.) ''

It is true, as plaintiff argues, that that case can be distinguished on its facts, but this in no way reduces the cogency of its logic. No stronger authority for plaintiff is the one additional case it cites, *Matter of Mannor Mar. Realty Corp.* (*Bd. of Assessors*) (N. Y. L. J., Jan. 4, 1965, p. 17, col. 8), for its holding, that upland in front of which the owner has placed fill is nonetheless to be valued for tax purposes as waterfront property, resulted from the court's conclusion that the upland owner '' has the same rights in and across the filled in land as if no filling had been done '' and is, therefore, simply a recognition of the fact that the upland owner retains riparian rights.

None of the cases to which plaintiff refers on this point involved the power of alienation. Such limitation upon alienation of lands under water as there is exists to protect the public right of navigation and other lawful uses of the water (*Appleby* v. *City of New York*, 235 N. Y. 351, 362; *Tiffany* v. *Town of Oyster Bay*, 234 N. Y. 15, 20; *Roe* v. *Strong*, 107 N. Y. 350, 358). To deny the town authority to convey the filled land is to ignore plaintiff's concession '' that navigation has been in no way adversely affected by the fill '' and to accept the contradiction that dry land is navigable. Legal fiction need not be carried to that '' dryly logical extreme '' (*Hynes* v. *New York Cent. R. R. Co.*, 231 N. Y. 229, 235) nor should the implied restraint on alienation of waterfront property be extended so unduly (*Matter of City of New York* [*12th Ave.*], 295 N. Y. 415, 428). It follows that as to the filled portion of Lot 639 the authority granted the Town Board by subdivision 2 of section 64 of the Town Law is sufficient to authorize conveyance, and since that portion is manifestly distinguishable from that which remains under water, the contract is good for the filled portion even

if it be bad as to the land actually under water (*People* v. *Mauran*, 5 Denio 389, 397).

It is not, however, bad even as to the land actually under water. Plaintiff has made upland out of the town's land under water. Though plaintiff retains riparian rights over the new upland, this is because "justice mitigates and corrects the harshness of strict law and   *   *   *   will not permit the permanent union of his [plaintiff's] interest with that of the town as a result of his [plaintiff's] mistake" (*Tiffany* v. *Town of Oyster Bay*, 234 N. Y. 15, 22). The town clearly has authority to convey land under water to the adjacent upland owner (*People* v. *Steeplechase Park Co.*, 218 N. Y. 459; see *Matter of Long Sault Development Co.*, 212 N. Y. 1; *Coxe* v. *State of New York*, 144 N. Y. 396), and since plaintiff's riparian rights are protected there is no harshness, no mitigating circumstance, that necessitates treating the new upland, for purposes of the town's authority to convey, as other than what it is in fact — upland. By acquiring the new upland Augustus will become an upland owner with respect to all of the land under water that Lot 639 encompasses, with the possible exception of the area immediately beneath the boat slip. As to the boat slip area, it is not clear whether there is any fill beneath it extending south of plaintiff's southerly boundary. It would, therefore, be necessary to try that issue of fact were there no other basis for upholding the proposed conveyance.

There is another basis, however, in section 64 of the Town Law. That section, which enumerates the general powers of town boards, provides: "Subject to law and the provisions of this chapter, the town board of every town:   *   *   *   2.   *   *   *   may, upon the adoption of a resolution, convey real property in the name of the town, which resolution shall be subject to a permissive referendum." Plaintiff points to the words " subject to law " and to two rules of decisional law. The first, that property impressed with a trust for the public cannot be alienated without express legislative sanction (*Miller* v. *City of New York*, 15 N Y 2d 34; *Brooklyn Park Comrs.* v. *Armstrong*, 45 N. Y. 234), constitutes no bar for, as noted above, conveyance is authorized by express resolution of the Town Board, the town's legislative body. The *Brooklyn Park* case required authorization by the State Legislature only because the property had been acquired by the city under an act of the State Legislature which limited its use to a park. In the instant case, the town acquired its title neither from the State nor pursuant to limited State authorization but under colonial grant. In respect of the conveyance of property, the Town

Board acts by resolution (Town Law, § 64, subd. 2), and its resolutions are all of the legislative sanction needed to comply with the *Brooklyn Park* rule.

The second rule of decisional law to which plaintiff refers is that lands under navigable or tidewaters are held on public trust and cannot be alienated except for some public purpose or some reasonable use which can fairly be said to be for the public benefit. Such is the rule declared by *Coxe* v. *State of New York* (144 N. Y. 396), which recognized, as permissible, grants to a municipality, to a railroad for right of way, to corporations and private persons engaged in commerce or navigation, or to owners of adjoining upland either for beneficial enjoyment or for commercial purposes, but stated that such a grant could not be made for speculative purposes nor could the State traffic in such lands like an individual. The difficulty is that the statements in the *Coxe* case upon which plaintiff relies are dictum and that there are cases both earlier and later to the contrary. Thus, in *People* v. *Steeplechase Park Co.* (218 N. Y. 459, 479–480) the validity of a conveyance to one not the upland owner is recognized in the statement that " Where the state has conveyed lands without restriction intending to grant a fee therein for beneficial enjoyment, the title of the grantee *except as against the rights of riparian or littoral owners*, is absolute " (emphasis supplied); the opinion in *Matter of Long Sault Development Co.* (212 N. Y. 1, 8) states: " The power of the legislature to grant land under navigable waters to private persons or corporations for beneficial enjoyment has been exercised too long and has been affirmed by this court too often to be open to serious question at this late day. (*Lansing* v. *Smith*, 4 Wend. 9; *People* v. *N. Y. & Staten Island Ferry Co.*, 68 N. Y. 71; *Langdon* v. *Mayor, etc., of N. Y.*, 93 N. Y. 129.) The contemplated use, however, must be reasonable and one which can fairly be said to be for the public benefit *or not injurious to the public.*" (Emphasis supplied); in *Roe* v. *Strong* (107 N. Y. 350, 358) the court stated: " The title to the soil under navigable waters vested in the Long Island towns under the colonial patents was, undoubtedly, subject to the public right of navigation, and it would seem to follow that the towns could not alienate the title so acquired *to the material prejudice of the common right.*" (Emphasis supplied); and *Langdon* v. *Mayor, etc., of City of New York* (93 N. Y. 129, 156); *Towle* v. *Remsen* (70 N. Y. 303, 308) and *People* v. *New York & Staten Is. Ferry Co.* (68 N. Y. 71, 78) all recognized an absolute right of conveyance. Each of those statements or holdings may also be characterized as obiter, however: the

*Steeplechase Park, Langdon, Towle* and *New York and Staten Is. Ferry* cases because the grantee held the upland either by conveyance or by adverse possession; the *Long Sault* case because it held the grant in question invalid and the *Roe* case because its holding was that plaintiff had not shown that the town ever conveyed title.

However, when the cases are viewed in terms of the result reached rather than the statements made, it is at once apparent that the only situation in which a grant to a private person or corporation has been held unauthorized is that in which the grant was of the entire ocean front of a county (*Marba Sea Bay Corp.* v. *Clinton St. Realty Corp.*, 272 N. Y. 292), entire control of navigation of a large and important portion of a navigable river (*Matter of Long Sault Development Co.*, 212 N. Y. 1, *supra*), all lands under water in four counties (*Coxe* v. *State of New York*, 144 N. Y. 396, *supra*), or of an area one mile wide containing 1,000 acres in the harbor of Chicago (*Illinois Cent. R. R. Co.* v. *Illinois*, 146 U. S. 387). That grants of land underwater have been upheld when made for a use beneficial to the public (*Saunders* v. *New York Cent. & Hudson Riv. R. R. Co.*, 144 N. Y. 75, *supra*), or to upland owners (see cases cited in the preceding paragraph) does not necessitate the conclusion that only conveyance for a public purpose or to an upland owner is authorized. Limitation of the town's authority to convey is implied in order to protect the public interest and should be extended no further than is necessary to protect that interest against impairment. This is recognized by the under-scored words in the *Long Sault* quotation set forth above ("not injurious to the public") and in the Supreme Court's statement in the *Illinois Central* case (p. 453) that: "The control of the State for the purposes of the trust can never be lost, *except as to such parcels as* are used in promoting the interests of the public therein, or *can be disposed of without any substantial impairment of the public interest in the lands and waters remaining*," (emphasis supplied).

From the foregoing analysis the court concludes that while conveyance of lands under water for a public purpose is permissible because it accords with the public trust, purpose is not the determinative factor, see *Saunders* v. *New York Cent. & Hudson Riv. R. R. Co.* (144 N. Y. 75, 86, *supra*); cf. *Matter of Fahnestock* v. *Office of Gen. Serv.* (24 A D 2d 98). Rather, the validity of the conveyance turns on the degree to which the public interest will be impaired, and, therefore, a "grant of a few hundred feet, for enjoyment in a manner which does not interfere with navigation" (*People* v. *Steeplechase Park*

*Co.*, 218 N. Y. 459, 482 [concurring opn. of WILLARD BARTLETT, Ch. J.]) may be sustained. Defendant Augustus on examination before trial stated that he intended to use the property for a restaurant or for parking. The fact that Augustus may have access to Lot 639 only from the water, if such be the case, raises a question concerning the wisdom of his purchase, but in no way affects the town's authority to convey. Neither the size of Lot 639 nor anything in the moving papers (inclusive of Augustus' possible use of the property for a restaurant or for parking) suggests that conveyance to Augustus will in any way impair public interest in the remaining lands and waters or be injurious in any way to the public interest.

The conclusion is that conveyance to Augustus by the town is permissible and not illegal. Defendant Augustus' cross-motion for summary judgment is, therefore, granted and the complaint dismissed.