UNITED STATES of America,
Plaintiff,

v.

BENTON AND COMPANY, INC.,
Defendant.

Crim. No. 72–1.

United States District Court,
M. D. Florida,
Tampa Division.

July 19, 1972.

Oscar Blasingame, Asst. U. S. Atty.,
M. D. Fla., Tampa, Fla., for plaintiff.

Leonard W. Cooperman, St. Petersburg, Fla., for defendant.

## OPINION AND ORDER

KRENTZMAN, District Judge.

This came before the Court upon defendant's motion to dismiss the criminal information in this cause. Both parties have filed memoranda relative to this motion which have been considered by the Court in the opinion and order which follows:

## DUPLICITY

■ The information charges that defendant "did fill, alter, and modify" the condition of a navigable water of the United States without having obtained the recommendation of the Chief of Engineers and the authorization of the Secretary of the Army in violation of 33 U.S.C. §§ 403, 406.

Defendant contends that the information violates Rule 8 of the Federal Rules of Criminal Procedure in that it duplicitously charges two offenses in its one count. That is, it is contended that the act of "filling" is one offense under the statute, while the act of "altering and modifying" constitutes another separate offense.

In support of this contention, defendant relies primarily upon Gleason Coal Co. v. United States, 30 F.2d 22 (6 Cir. 1929). The defendant in that case assigned as error the trial court's denial of defendant's motion for directed verdict where the government had alleged that the defendant had engaged in the unauthorized dredging of a navigable water, but had failed to allege or prove that the defendant's actions had "altered or modified" the course or condition of that navigable water.

There is some support for defendant's theory in *Gleason*. In holding that proof of alteration of the navigable water was not necessary under the statute, the Court set out a diagramatic analysis of the statute:

"The statute may be analyzed thus: 'It shall not be lawful to excavate or fill

or in any manner to alter the course, etc., . . . of any navigable water of the United States.'" 30 F.2d at 23.

This implication that the statute created three separate offenses was compounded by the *Gleason* court's explanation that "the clause 'to alter the course . . . of', refers only to acts other than excavating and filling which affect ports, river channels, etc." *Id.* The *Gleason* court rejected defendant's contention that it was Congress' intention to criminalize only filling or excavating that, in fact, altered the course of a navigable water by these words:

"It is scarcely conceivable that Congress intended to confine its prohibition within such narrow limits, for obviously in very few cases would isolated acts of dredging have a serious effect. The evil to be remedied was the combined effect of many uncontrolled dredgers." *Id.*

From the logic of *Gleason* it would follow that if excavating and filling are separate offenses without proof of an alteration of the waterway, then "altering" itself must be a separate offense.

The *Gleason* court came to the right decision, but for the wrong reasons. Isolated acts of dredging do have serious effects, and that was as true in 1929 as it is today. Any excavation or filling operation must necessarily "alter" or "modify" the body of water which is its subject. However, the degree or extent of such modification will depend upon the size of the operation. The words "filling", "excavating" and "altering or modifying" do not refer to distinct and separate offenses, but rather refer to the different ways in which one offense may be committed. The words "altering" or "modifying" are a mere catch-all which was designed to cover the multitude of acts other than filling and excavating that would constitute offenses under the statute.

The information here charges the defendant with one offense. By alleging not only "filling", but also "altering" and "modifying", the government protects itself at trial in the event it could prove that the defendant did alter or modify a navigable body of water even if the proof indicated that such an alteration or modification was not the result of a filling operation. There is nothing unusual or improper about this manner of pleading. Where, as here, a statute specifies several alternative ways in which an offense can be committed, the indictment may allege these several ways in the conjunctive and conviction thereon will stand if the proof of one or more of the means is sufficient. Fields v. United States, 408 F.2d 885 (5 Cir. 1969).

## TIME

Defendant contends secondly that the information is defective in that it fails to state in certain terms the time or date of the commission of the offense charged.

Although strict rules of pleading have been abandoned in Federal criminal cases, ordinarily good pleading still includes an allegation of the date of the offense. An indictment or information is defective where it fails to allege that the offense was committed within the time period of the statute of limitations. United States v. Gammill, 421 F.2d 185 (10 Cir. 1970).

In the instant case, defendant is charged with committing acts in violation of the statute "[B]eginning at a time unknown and continuing until the date of this information." The only issue here, therefore, is whether the defendant is charged with an offense which is continuing in nature, for where that is the case the indictment or information need not allege the date of the commencement of the violation, but need only allege that the last act in the commission of the crime occurred within the statute of limitations. United States v.

Johns-Manville Corp., 213 F.Supp. 65 (D.C.Pa.1962); United States v. Luros, 243 F.Supp. 160 (N.D.Iowa 1965); See also, Pinkerton v. United States, 145 F. 2d 252 (5 Cir. 1944).

A "continuing offense" is one which may consist of separate acts or a course of conduct but which arises "from that singleness of thought, purpose or action, which may be deemed a single 'impulse' . . . ." United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 224, 73 S.Ct. 227, 231, 97 L.Ed. 260 (1952).

The Act which preceded the present 33 U.S.C. § 403 stated that "[T]he continuance of any such obstruction . . . shall constitute an offense and each week's continuance of any such obstruction shall be deemed a separate offense." Act Sept. 19, 1890, c. 907 § 10, 26 Stat. 454. Although one case held that this section of the Act of 1890 had not been superseded by the later statute, United States v. Wiskah Boom Co., 136 F. 42 (9 Cir. 1945), that is probably incorrect. United States v. Wilson, 235 F.2d 251 (2 Cir. 1956). Nevertheless, the legislative history of the Rivers and Harbors Act as well as the fact that suits for injunctive relief are statutorily authorized and have been sustained thereunder indicates that an offense under 33 U.S.C. §§ 403, 406 is one which is continuing in nature. See, e.g., United States v. Republic Steel, 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960).

Accordingly, allegations of the time of the offense contained in the instant information are sufficient.

## UNREASONABLE OBSTRUCTION

Defendant contends that the information is defective in that it fails to allege that the acts committed by the defendant *unreasonably* obstructed the navigable waters of the United States. Defendant relies upon a statement from Wisconsin v. Illinois, 278 U.S. 367, 49

S.Ct. 163, 73 L.Ed. 426 (1929) to support this contention:

"The true intent of the Act of Congress was that unreasonable obstructions to navigation and navigable capacity were to be prohibited, and in the cases described in the second and third clauses of section 10 [here, 33 U.S.C. § 403], the Secretary of War, acting on the recommendation of the Chief of Engineers, was authorized to determine what in the particular cases constituted an unreasonable obstruction." 278 U.S. at 413, 49 S.Ct. at 170.

The above statement is not pertinent to a criminal prosecution under the Rivers and Harbors Act of 1899. Wisconsin v. Illinois, supra, was a proceeding in equity in which the complainant contended that the Secretary of War was without power to approve or authorize an obstruction of a navigable water of the United States under Section 10 (33 U.S.C. § 403) of the Act because that section provided that only Congress by statute or otherwise could affirmatively authorize "obstructions."

The Supreme Court rejected this contention by holding that the words "affirmatively authorized by Congress" should be construed in light of "administrative exigencies." That is, with certain exceptions, Congress had delegated the power to the Secretary of War to authorize obstructions to the navigable capacity of the waters of the United States. The above quotation from Wisconsin v. Illinois cited by the defendant means merely that the Secretary of War should be guided by the rule of reason in making his administrative determination.

The above quotation does not mean that the government must allege and prove that an unauthorized obstruction was unreasonable in order to prevail in a criminal or civil action under 33 U.S. C. §§ 403, 406. As stated in Zabel v. Tabb, 430 F.2d 199 (5 Cir. 1970) an action brought to compel the issuance of a dredge and fill permit:

"The Act covers both building of structures and the excavating and fill-

ing in navigable waters. It is structured as a flat prohibition *unless*—the unless being the issuance of approval by the Secretary [of the Army] after recommendation of the Chief of Engineers . . . Although the Act has always been read as tempering the outright prohibition by the rule of reason against arbitrary action, the Act does flatly forbid the obstruction." 430 F.2d at 207.

Accordingly, this Court holds that the government is not required to allege in the information that defendant unreasonably obstructed a navigable water of the United States.

### PLACE

Defendant has abandoned its contention that the information does not adequately describe the place where the alleged offense was committed. It is, therefore,

Ordered and adjudged:

Defendant's motion to dismiss the criminal information is hereby denied.