UNITED STATES of America, Plaintiff,

v.

Emma M. KANE and Town of North Hempstead, Defendants.

No. 76 C 1459.

United States District Court,
E. D. New York.

Nov. 27, 1978.

David G. Trager, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., for plaintiff, by Herbert G. Johnson, Asst. U. S. Atty., Brooklyn, N. Y.

Corwin & Matthews, Huntington, N. Y., for defendant Kane, by Charles T. Matthews, Huntington, N. Y.

Joseph A. Guarino, Town Atty., Town of North Hempstead, N. Y., for defendant Town of North Hempstead, by Bruce M. Migatz, New Hyde Park, N. Y.

## MEMORANDUM DECISION AND ORDER

SIFTON, District Judge.

This is an action brought by the United States pursuant to 33 U.S.C. § 406 seeking an order directing defendants to remove two six-foot-high chain link fences which are said to be obstructing public access along the foreshore of property along Manhasset Bay owned by the defendant Town and leased by it to the defendant Kane. An injunction is also sought to restrain defendants from putting the fences up again or extending them without first obtaining authorization from Secretary of the Army, pursuant to 33 U.S.C. § 403. In response to the Government's lawsuit, defendant Kane has filed a counterclaim against the Secretary of the Army seeking an order of this Court directing the Secretary to issue a permit pursuant to 33 U.S.C. § 403 authorizing the fences to be maintained.

Defendant Kane has now moved for summary judgment dismissing the complaint and in her favor on the counterclaim.[1]

---

1. The motion is defective since no statement of material facts as to which plaintiff claims there is no genuine issue of fact to be tried, required by Rule 9(a) of the local rules of this Court, has

The Government has filed in opposition to defendant's application and seeks summary judgment in its favor on both the complaint and the counterclaim. See, *Procter & Gamble Independent Union v. Procter & Gamble Mfg. Co.,* 312 F.2d 181, 190 (2d Cir. 1962), *cert. denied,* 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963); *Robertson v. Nat'l Basketball Ass'n,* 389 F.Supp. 867, 894–95 (S.D.N.Y.1975), *aff'd,* 556 F.2d 682 (1977); *Moore's Federal Practice,* ¶ 56.12 (2d Ed. 1976).

The first question for determination by this Court on the cross-motions for summary judgment is whether there are disputed issues of material fact. There appears to be no such issues with regard to the claim asserted by the United States. There is no dispute that the two fences were erected by Mrs. Kane following the grant of a building permit allowing their construction by the defendant Town in the Spring of 1973. Nor is it disputed that the fences extended into Manhasset Bay, 45 feet seaward of the high water mark to the mean low water mark. Finally, it is undisputed that no authority has been obtained from the Secretary of the Army for the construction or maintenance of the two fences.

These being the undisputed facts, there can be no question that the United States is entitled to judgment as a matter of law on its complaint (unless, of course, defendant Kane is entitled to prevail on her counterclaim). The fences are "obstructions . . to the navigable capacity of . . . waters of the United States" since they obstruct the capacity for navigation over a part of the waters in question at all times, except at mean low water. *Cf. Hubbard v. Fort,* 188 F. 987, 996 (D.N.J.1911); *Sierra Club v. Leslie Salt Co.,* 412 F.Supp. 1096, 1100–02 (N.D.Cal.1976). As such, they require Congressional authorization unless they are the sort of "structure" permitted under Clause 2 of Section 403 or the sort of "work" permitted under Clause 3 of the same section with the authorization of the Secretary of the Army.[2] Assuming that the fences are either "structures" or "works" referred to in those two clauses, there has been no such authorization from the Secretary of the Army. If they are not "structures" or "works", then they are prohibited since no law of the United States authorizes their existence. *Sierra Club v. Leslie Salt Co., supra.*

■ Defendant's only answer to the Government's case is that both defendants have a vested property right in the portion of the foreshore across which the fences extend, the defendant Town, as the owner of the foreshore, and defendant Kane, as lessee of the Town. The answer to this argument, as the Government points out, was given by the Supreme Court in *United States v. Virginia Electric & Power Co.,* 365 U.S. 624, 628, 81 S.Ct. 784, 5 L.Ed.2d 838 (1961), quoting from its earlier opinion in *United States v. Chicago, M., St. P. & P. R. Co.,* 312 U.S. 592, 596–97, 61 S.Ct. 772, 775, 85 L.Ed. 1064 (1941):

"The dominant power of the federal Government, as has been repeatedly held, extends to the entire bed of a stream, which includes the lands below ordinary

---

been filed. *See,, S. E. C. v. Research Automation Corp.,* 585 F.2d 31 (2d Cir. 1978).

**2.** Title 33, Section 403 reads as follows:

"The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, canal, lake, harbor or refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same."

See Judge Renfrew's discussion of the meaning of the three clauses of 33 U.S.C. § 403 in *Sierra Club v. Morton,* 400 F.Supp. 610, 633 (N.D.Cal. 1975).

high-water mark. The exercise of the power within these limits is not an invasion of any private property right in such lands for which the United States must make compensation. [Citations omitted.] The damage sustained results not from a taking of the riparian owner's property in the streambed, but from the lawful exercise of a power to which that property has always been subject."

Thus, even if the Town had not reserved to itself under the lease the power to compel compliance with Federal statutes (which it did) and even if defendant Kane had not affirmatively agreed to comply with all Federal statutes and specifically agreed that "the occupancy . . . will not unlawfully obstruct navigation", neither the restrictions of the lease nor, on the other hand, the extensive rights of an owner of fee of real estate serve to restrict the application of a statute of the United States relating to the use to which such real estate can be put. *See, Sanitary Dist. v. United States,* 266 U.S. 405, 45 S.Ct. 176, 69 L.Ed. 352 (1925); *United States v. Republic Steel Corp.,* 362 U.S. 482, 80 S.Ct. 884, 4 L.Ed.2d 903 (1960); *In re Kinsman Transit Co.,* 338 F.2d 708, 718 (2d Cir. 1964), *cert. denied, Continental Grain Co. v. City of Buffalo,* 380 U.S. 944, 85 S.Ct. 1026, 13 L.Ed.2d 963 (1965); *United States v. Sexton Cove Estates, Inc.,* 526 F.2d 1293, 1298 (5th Cir. 1976); *United States v. Benton & Co.,* 345 F.Supp. 1101, 1103–04 (M.D.Fla.1972). Accordingly, there appears no reason why plaintiff is not entitled to summary judgment on its complaint, unless, of course, plaintiff improperly withheld issuance of authorization for the fences—an issue raised by defendant's counterclaim.

With regard to defendant Kane's counterclaim, the initial problem raised by defendant's pleading is jurisdictional. Jurisdiction is claimed under 28 U.S.C. § 1346 and 28 U.S.C. § 1361 providing for mandamus proceedings against a Federal officer. None of the provisions of Section 1346 (which includes the Tucker Act and the Federal Tort Claims Act) would appear to have application here. Even if some tort is alleged against the United States, 28 U.S.C.

§ 2680 would appear to rule out the application of that statute to a discretionary act such as that at issue here. The limitations placed on 28 U.S.C. § 1361 by case law requiring that the Federal officer's duty be "plain" rather than discretionary, *Lovallo v. Froehlke,* 468 F.2d 340, 344 (2d Cir. 1972), *cert. denied* 411 U.S. 918, 93 S.Ct. 1555, 36 L.Ed.2d 310 (1973), likewise indicate the lack of application of that statute to the case at bar. Nor is there jurisdiction under the Administrative Procedure Act, 5 U.S.C. § 701, *Califano v. Sanders,* 430 U.S. 99, 107, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). However, as *Califano v. Sanders, supra,* suggests, jurisdiction to review agency action previously founded on 5 U.S.C. § 701, *cf., Citizens Committee for Hudson Valley v. Volpe,* 425 F.2d 97 (2d Cir.), *cert. denied,* 400 U.S. 949, 91 S.Ct. 237, 27 L.Ed.2d 256 (1970), can now properly be founded on the revised terms of 28 U.S.C. § 1331(a) since a plaintiff no longer need meet the amount in controversy requirement in a suit brought against a Federal officer in his official capacity.

The "cause of action" defendant asserts in his counterclaim is an action pursuant to 5 U.S.C. § 702 seeking review of the Secretary's action or inaction in failing to grant authorization for the fences. The basis for the cause of action is that the Secretary acted unlawfully in refusing to authorize the fences since he based his decision not on navigational considerations, but rather on the consideration that "the public has a right of free access along the foreshore." This consideration defendant Kane urges is improper, first, because only navigational considerations are, it is argued, to be taken into account in determining whether to grant a permit under Section 403 and, secondly, because there is, under New York Property Law, no public right to free access along the foreshore with which the fences can interfere.

Defendants first argument is without merit. Certainly, in the face of the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4331 *et seq.* it is too

**558**

late to urge that the Secretary of the Army is confined to considering the impact of the permit authorization on navigation. *See, Zabel v. Tabb,* 430 F.2d 199 (5th Cir. 1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 873, 27 L.Ed.2d 808 (1971). Section 102 of NEPA, 42 U.S.C. § 4332, explicitly provides:

"The Congress authorizes and directs that, to the fullest extent possible (1) the policies, regulations, and public laws of the United States shall be interpreted and administered in accordance with the policies set forth in this Act. . . ."

Consistent with this instruction by Congress the Secretary and the Courts have regarded the obstruction of navigable water of the United States necessitating an application for a permit as an occasion to analyze and take into account the environmental considerations set forth in NEPA, rather than as the sole issue to be evaluated in determining whether a Section 403 structure should be authorized. *See, Zabel v. Tabb, supra; Citizens for Clean Air, Inc. v. Corps,* 349 F.Supp. 696, 708–09 (S.D.N.Y.1972).

Nor is there any basis for concluding that furthering public access to the foreshore of a navigable water of the United States is not furthering one or more of the broadly stated policies of NEPA. Included among those policies are "a national policy which will encourage . . . enjoyable harmony between man and his environment", 42 U.S.C. § 4331, and "the continuing policy of the Federal government . . . to use all practicable means and measures . . to foster and promote the general welfare, [and] to create and maintain conditions under which man and nature can exist in productive harmony," *id.* Most to the point, it is stated to be the continuing responsibility of the Federal Government to improve its functions to the end "that the Nation may . . . attain the widest range of beneficial uses of the environment [and] achieve a balance between population and resource use which will permit . . a wide sharing of life's amenities." *Id.* Clearly, the "amenities" and "beneficial uses of the environment" referred to include access to the shoreline of Manhasset Bay between mean high and mean low water. Equally clearly the decision not to authorize the chain link fences is consistent with "wide sharing" of such amenities and the "widest range" of these beneficial uses.

Defendant Kane in her reply brief expresses concern that "if the court finds that the public has an absolute right to free and unhampered access to these fragile beach areas whether the upland is owned by the Federal, State or local governments or by private individuals then grave consequences will follow." However, neither NEPA nor this decision recognizes any such absolute right. The statute explicitly provides that the attainment of the widest range of beneficial uses of the environment be the widest range attainable "without degradation, risk to health or safety or other undesirable or unintended consequences." 42 U.S.C. § 4331(b)(3). The "wide sharing of life's amenities" is to be achieved on the basis of a strict "balance between population and resource use." The fact that in a democracy the sharing of environmental amenities will, in and of itself, have detrimental effects on the environment did not go unrecognized by Congress. However, Congress explicitly decided that the environment was to be saved not for the few, but for the many and that the environmental injury inevitable as a result of democratic sharing of natural resources should not, in and of itself, rule out a deliberate effort to expand public enjoyment of those resources in all cases in which health and safety was not jeopardized and environmental degradation could not be demonstrated. Defendant has shown no basis for this Court to conclude that the Secretary was arbitrary or capricious in deciding that no such adverse impact can be anticipated from the absence of the chain link fences in this case. As a matter of law, the Secretary clearly had authority in law to consider public access to the shoreline in determining whether to authorize the fences under Section 403.

Defendant's final argument is that neither Federal, State nor local law recognizes a right on the part of the public to access to the shoreline between the mean

low water mark and the mean high water mark in the circumstances here existing. Although in other circumstances and locations the public may have access to the nation's beaches, the argument goes, this is not so in North Hempstead because of peculiarities of local land law. However, the cases cited by defendant recognizing that *title* to the lands under Long Island's harbors and bays exists in the local towns *Trustees of Freeholders and Commonalty of Town of Southampton v. Mecox Oyster Co.,* 116 N.Y. 1, 22 N.E. 387 (1889); *Grace v. Town of North Hempstead,* 166 App.Div. 844, 152 N.Y.S. 122 (2d Dep't 1915), *aff'd,* 220 N.Y. 628, 115 N.E. 1040 (1917), do not resolve the question at issue here. That title exists in the towns does not mean that there is no right of free passage on the part of the public across the foreshore. On the contrary, the New York cases recognize that rights to passage over the foreshore (possessed by the local towns, if at all, in their sovereign rather than proprietary capacity) are not capable of conveyance and extinction by transactions such as the lease here at issue, but on the contrary remain in the Town in its sovereign capacity and in the public at large. *Cox v. State,* 144 N.Y. 396, 39 N.E. 400 (1895); *Tucci v. Salzhauer,* 40 A.D.2d 712, 336 N.Y.S.2d 721 (2d Dep't 1972), *aff'd,* 33 N.Y.2d 854, 352 N.Y.S.2d 198, 307 N.E.2d 256 (1973); *People of Town of Smithtown v. Poveromo,* 71 Misc.2d 524, 336 N.Y.S.2d 764 (D.Ct.Suff.Cty.1972), *rev'd on other grounds,* 79 Misc.2d 42, 359 N.Y. S.2d 848 (App.Term Sup.Ct.1973); *cf. Riviera Ass'n, Inc. v. Town of North Hempstead,* 52 Misc.2d 575, 276 N.Y.S.2d 249 (Sup.Ct.1967); *see also, Martin v. Waddell's Lessee,* 16 Pet. 367, 41 U.S. 367, 10 L.Ed. 997 (1842). It is such rights of public access that the Secretary could, in his discretion, determine should be fostered by denying the authorization requested.

Accordingly, summary judgment is granted in plaintiff's favor for the relief sought in its complaint and dismissing defendant's counterclaim. Plaintiff shall submit a form of judgment consistent with this opinion on two (2) days notice to defendant.

SO ORDERED.