UNITED STATES of America,
Plaintiff-Appellee,

v.

Emma M. KANE, Defendant-Appellant,

Town of North Hempstead, Defendant.

Emma M. KANE, Defendant-Appellant,

v.

Clifford L. ALEXANDER, Jr., Secretary
of the Army, Defendant on
Counter-Claim-Appellee.

No. 1089, Docket 79–6050.

United States Court of Appeals,
Second Circuit.

Argued June 1, 1979.

Decided July 12, 1979.

Charles T. Matthews, Huntington, N. Y., Corwin & Matthews, Huntington, N. Y., for defendant-appellant.

Herbert G. Johnson, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., Eastern District of New York, Brooklyn, N. Y., Harvey M. Stone, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for plaintiff-appellee and defendant on counter-claim-appellee.

Before FRIENDLY, FEINBERG, Circuit Judges, and NEAHER, District Judge.*

NEAHER, District Judge:

The United States, on behalf of the Secretary of the Army, commenced this action to enforce by injunction certain administrative directives of the Army Corps of Engineers (ACE) issued to defendant-appellant, Emma M. Kane, as lessee of a plot of land extending under the navigable waters of Manhasset Bay, Long Island. 33 U.S.C. §§ 403, 406. The United States and appellant filed cross-motions for summary judgment and the district court granted such judgment in favor of the government for the relief it sought. Appellant was directed to remove existing chain link fences she had erected below the mean high water line of the Bay and enjoined from ever maintaining such fences without prior authority from the Secretary of the Army as required by 33 U.S.C. § 403. Appellant's counterclaim seeking a direction that the Secretary issue the requisite permit was dismissed. For the reasons which follow, we hold that it was error to grant summary judgment to the government and to dismiss appellant's counterclaim on the administrative record presented, and that the matter should be remanded to the Secretary for further proceedings as hereinafter indicated.

The following facts are concededly not in dispute. Appellant since 1972 has owned and occupied a residence on land situated on the shore of Manhasset Bay in Port Washington, Town of North Hempstead, Nassau County, New York. Commencing in 1949 appellant's predecessor in interest, as an upland owner, leased from the Town for a term of years an adjacent parcel of land under water ("water plot") extending from the mean high water line a distance of 300 feet out into the Bay. An apparent purpose of the lease was to enable the construction and maintenance of a private pier and mooring float extending from the upland property 176 feet into the Bay, which was subsequently accomplished with the permission of both the Town and ACE. In 1972, when appellant acquired the property, the Town leased the water plot to her for a

* Hon. Edward R. Neaher, of the United States District Court for the Eastern District of New York, sitting by designation.

term of five years at $300 annual rental, with a renewal option for a similar term which has been exercised.

Appellant's expectations of exclusive enjoyment of the water plot were apparently threatened by "trespassers" in the spring of 1973. Finding support in the lease for her right to "peaceably hold and occupy the described premises without molestation or disturbance" from the Town, appellant obtained a building permit from the Town and pursuant thereto erected chain link fences on both sides of the plot which extended 35 feet and 44 feet respectively beyond the mean high water line of the Bay. Unfortunately, appellant overlooked other clauses of her lease which recognized the paramount federal jurisdiction over navigable waters [1] and obligated her to "not unlawfully obstruct navigation" by her occupancy of the water plot. This oversight was soon called to appellant's attention by ACE, which pointed out the necessity for a federal permit authorizing the fences, instructed her how to apply and assured her of "prompt consideration" thereof.

Appellant filed the requisite application with ACE on May 23, 1973. To complicate matters, the Town by then had rescinded its earlier permit as "invalid" and directed appellant to remove the fences beyond the high water line. In response to the ACE notice of appellant's application, the Town on January 15, 1974, also filed an objection to the grant of a federal permit. The federal application was thereafter "held in abeyance" by ACE pending a resolution of the Town's position on the fences. Subsequently, however, the Town notified ACE that the objection was withdrawn and re-

served "for determination by the Town upon application by Mrs. Kane for a permit . . . under the Town Code." When that was not forthcoming, ACE followed up with this litigation after appellant failed to comply with its direction to remove the fences.

Except for the institution of this suit, it does not appear from the administrative record that ACE ever finally determined appellant's application for "after-the-fact" authorization to maintain the fences in question.[2] ACE has made it quite clear, however, that even if appellant were to receive approval from the Town, it would not grant a federal permit because of its stated view that

"the fences will obstruct free access along the shore to the local citizenry, something that has long been held a public right."

In granting an injunction directing appellant to remove the fences, the district court relied on the uncontested fact that no prior federal permit to erect them had been obtained. The court recognized, however, that the real issue presented by appellant's counterclaim was whether ACE had improperly withheld authorization as subsequently applied for. The court decided that issue in favor of the government, holding that under the mandate of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.,* the Secretary of the Army clearly had authority to take into account, as an environmental consideration, "public access to the shoreline" in determining whether or not to authorize appellant's fences. In the district court's view the ACE failure to recommend a permit, was consistent with NEPA's goal to "attain the

---

1. The lease provides that:

"The tenant shall promptly comply with all statutes, ordinances, orders, regulations and requirements of the Federal, State, and local governments and any and all their departments and bureaus applicable to said premises for the construction, repair or maintenance of any structure thereon or for the correction, prevention and abatement of nuisances upon said premises or those that arise in the connection of the use thereof."

2. The ACE February 18, 1975, letter directing removal of the fences cannot be regarded as final rejection of appellant's application, since it was predicated on objections by the Town which had been withdrawn. Under applicable ACE regulations, it is still open to ACE to grant "after-the-fact" authorization, see 33 C.F.R. § 326.5, "if subsequent approval is received from the appropriate . . . local agency." 33 C.F.R. § 320.4(j)(1).

widest range of beneficial uses of the environment [and] achieve a balance between population and resource use which will permit . . . a wide sharing of life's amenities." 42 U.S.C. § 4331. Our difficulties with the decision below, which lead us to reverse and remand the matter, are twofold.

First, it is a fundamental rule that "the orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained," and that "an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained." *Securities and Exchange Commission v. Chenery Corp.,* 318 U.S. 80, 94–95, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943). Those requirements were clearly not satisfied in this case, which comes here in an entirely abstract posture. We are given no idea, for example, where ACE discovered the "long . . . held public right" or why it thought federal permit denial to be an appropriate method for enforcing or protecting it, other than the Town's original objections, which have since been withdrawn. No less important, we have no way of knowing what consideration, if any, was given to appellant's expressed need for the fences or to her contention that the lease gave her the right to exclude the public from the foreshore, despite the clear mandate of ACE's own regulations that "[t]he relative extent of the public and private need for the proposed structure or work" be considered "in the evaluation of every application." 33 C.F.R. § 320.4(a)(2)(i).

Furthermore, although the district court thought that "environmental" considerations would justify the ACE decision, no record was ever developed to support that

or any other reasonable basis for upholding denial of the federal permit.[3] As a reviewing court, moreover, the district court was not at liberty "to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." See *Securities & Exchange Commission v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947) (*Chenery II*).

Second, contrary to ACE's stated view, it is not at all clear that free access along the foreshore has been held to be a public right in New York when the state or a subdivision owning the properties has conveyed the right to a portion of the foreshore to a private party. *People v. Steeplechase Park Co.,* 218 N.Y. 459, 113 N.E. 521 (1916); *Riviera Association, Inc. v. Town of North Hempstead,* 52 Misc.2d 575, 276 N.Y.S.2d 249 (Sup.Ct.1967). Indeed, *Coxe v. State,* 144 N.Y. 396, 400, 39 N.E. 400, 402 (1895), expressly recognizes that "grants to the owners of the adjoining uplands, either for beneficial enjoyment or for commercial purposes have long been authorized, and recognized as one of the uses to which the state may lawfully apply such lands." Such later cases as *Tucci v. Salzhauer,* 40 A.D.2d 712, 336 N.Y.S.2d 721 (1972), *aff'd mem.,* 33 N.Y.2d 854, 352 N.Y.S.2d 198, 307 N.E.2d 256 (1973), and *Trustees of Freeholders and Commonalty of Town of Southampton v. Heilner,* 84 Misc.2d 318, 328, 375 N.Y.S.2d 761, 771 (Sup.Ct.1975), cited by the government, are distinguishable in their support of public rights of access to the foreshore of tidal waters, since the upland owners in those cases had no property rights below the high water mark, which is not the case here.

Nor are we persuaded that on the present record the administrative action may be sustained on the government's alternative argument that a public right of

---

**3.** We note that the ACE report to the United States Attorney for purposes of this litigation acknowledged that "no severe environmental disruption is expected to result from the work in question" and that concerned governmental environmental agencies had also voiced no objection. These included the U.S. Fish and Wildlife Service, the U.S. Environmental Protection Agency and the N.Y. State Department of Environmental Conservation.

non-navigational passage along the foreshore can be inferred on the basis of federal laws and regulations alone, and without regard to rights granted under state law. The long-settled rule is that the states, and not the federal government, hold title to the subaqueous land within their boundaries and have the concomitant power to determine the nature and extent of the interests adjacent land owners and others may acquire, subject only to the dominant federal right of navigation. See, *e.g.,* Submerged Land Act, § 2, 43 U.S.C. § 1301 *et seq.; State Land Board v. Corvallis Sand & Gravel Co.,* 429 U.S. 363, 381–82, 97 S.Ct. 582, 50 L.Ed.2d 550 (1977); *Barney v. Keokuk,* 94 U.S. 324, 24 L.Ed. 224 (1876); *Pollard's Lessee v. Hagen,* 44 U.S. (3 How.) 212, 11 L.Ed. 565 (1845). See generally Berland, *Toward the True Meaning of the Public Trust,* 1 Sea Grant L.J. 83, 100–10, 113–15 (1976). Whether the enactment of NEPA or the Secretary's new "public interest" regulations thereunder, 33 C.F.R. § 320.4(a), can be held to broaden the scope of the federal navigational servitude are questions which cannot be decided on this record.

The judgment of the district court is reversed and the case is remanded with directions to remand to the Secretary of the Army for such further proceedings, not inconsistent with this opinion, as may be appropriate.[4]

---

**4.** In view of the Town's indication that it would consider a permit under the applicable Town ordinance, appellant would be well advised to apply therefor, if she has not already done so.

In that event, ACE may wish, pursuant to 33 C.F.R. § 320.4(j)(5), to withhold action on the federal application until the Town decides the matter.